## Pennsylvania Labor Relations Board v. International Harvester Co.

*Charles M. Christler*, for plaintiff.

*Evans, Evans & Spinelli* and *Metzger & Wickersham*, for defendant.

SOFFEL, J., November 3, 1947.—This matter comes before the court on a petition for review of final decision and order of the Pennsylvania Labor Relations Board dated July 2, 1947, wherein Automotive Chauffeurs Parts and Garage Employees Local Union No. 926, American Federation of Labor, was designated as the exclusive representative of all International employes "engaged in stocking and selling all parts for farm machinery, at the North Side, Pittsburgh Branch,

Pittsburgh, Pennsylvania". This certification was the result of an election held March 6, 1947. The essential facts are admitted and may be summarized as follows:

On January 6, 1947, Local 926 filed a petition with the board requesting an investigation for the purpose of determining representation for collective bargaining purposes of all of International employes engaged in stocking and selling of parts in the North Side Pittsburgh Branch.

An investigation was instituted by the board. At the hearing thereon it was agreed between Local 926 and International to conduct an election for the purpose of determining an agent for collective bargaining purposes. The names of nine employes appearing on the January 6, 1947, payroll were agreed upon as the parties entitled to vote.

On February 19, International through its branch manager, F. E. Williams, advised Daniel DeGregory, agent for Local 926, of the transfer of R. A. Abbott from the parts department to the warehouse, another unit. This action was taken as a result of the transfer of a warehouse foreman to the office of the parts department, resulting in the vacancy filled by R. A. Abbott. A letter evidencing this action was transmitted from Williams to Troy Wakefield of the industrial relations department with International and no objection was made by the union. No notice of the transfer of Abbott was given the Pennsylvania Labor Relations Board.

On February 28, 1947, the board fixed the time and place for the election as March 6, 1947, at the offices of International.

Abbott appeared at the election March 6, 1947, and his vote was challenged by W. N. Sherk, a watcher for International. The challenged ballot was segregated and placed in a sealed envelope by the director of elections. Four votes were cast in favor and four against the requested representation. The challenged ballot was

later opened and counted in favor of Local Union 926. By a five-to-four vote, Local 926 was then constituted collective bargaining agent.

To the counting of this ballot and the resultant final decree of the board, exception was filed, which was overruled by the board under final order dated July 2, 1947. The case is now before this court on petition for review of said action.

The question involved may be thus stated: Did the Pennsylvania Labor Relations Board exercise lawful administrative discretion when it caused the ballot of R. A. Abbott to be opened and counted, and was its final order certifying the collective bargaining representative of employes so unreasonable, arbitrary, or illegal that the court should set aside the order?

It is the position of International that only qualified employes should have been permitted to vote; that the removal of an employe from a voting unit prior to an election, whether by discharge, resignation, or transfer, renders him ineligible to vote. Since Abbott had been transferred from one voting unit to another prior to the election, he was ineligible to vote, notwithstanding his previous certification and notwithstanding the fact that this transfer had not been reported to the board.

It is the position of the board that the company is bound by the voting and check list of nine employes constituting the employes entitled to vote, as evidenced by the stipulation entered into between the company and the union on January 6, 1947; that it was upon the basis of this agreement of the parties that the board directed the holding of the election; that even though the status of Abbott had changed prior to the election and he had been transferred to a new employment outside of the voting unit, the board used permissible discretion in directing the opening of Abbott's ballot which had been segregated and placed in a sealed envelope by the director of elections. With this con-

tention we cannot agree. We believe that the exception to the final order of the board should have been sustained.

The National Labor Relations Board has consistently held that an employe transferred from an eligible category prior to an election cannot participate in the election among the employes in the group from which he was transferred: Phelps Dodge Corporation, Copper Queen Branch, 36 NLRB 657.

In the matter of Manganese Ore Co. and Local 845 A.F. of L., 54 NLRB 1192, the union and employer had agreed that any employes after the date of direction permanently transferred from one voting unit to another should be eligible to vote. This case is reported as a directive for an election. The board said:

"We cannot in this instance approve the agreement of the parties because it contravenes our long standing policy respecting the determination of eligibility to vote in board conducted elections.

". . . It is our usual practice to provide that eligibility to vote shall be conferred upon all persons who were employed in the appropriate unit or voting group at a particular time prior to the issuance of our direction of election, usually during the last payroll period prior thereto, and that, in effect, the list of eligibles so determined may be decreased, but not augmented, by changes in the status of employes in the interim prior to the election itself. Thus, our customary formula for determining eligibility provides that employes who are permanently separated from their employment, as by resignation or discharge, during the period between the date of the selected payroll and the date of the election shall be removed from the list of eligible voters. Conversely, the policy of taking employment as of a specified payroll period prior to the direction of election as determinative of eligibility, operates to exclude from the eligible list any employes who may be newly hired in an occupational category within the appropriate unit or voting group between the date of the specified pay-

roll and the date of the election. This policy has been adopted in the interest of finality, certainty, and expedition; it is consistent with the universal practice which obtains in political elections, and we see no reason to depart from it. Where, as in the instant case, an employe may, in the interim between the payroll used to fix eligibility and the election, be transferred permanently from one voting group to another, we think that proper application of the general policy requires that such employe be removed from the eligible list for the first voting group, since he has been permanently severed from that group, but that he be not added to the eligible list for the second voting group, since as to that group he is in the position of a newly hired employe."

In Basic Magnesium, Inc., and Union of Smelter Workers, 56 NLRB 412, a vote was challenged under identical conditions as exist in the instant case. The board there said:

". . . Subsequent to the eligibility date, but prior to the date of the election, the employe was permanently transferred to work as a jack-hammer man, an eligible category in Group 8. It is the policy of the board, as expressed in the recent Manganese Ore case, that an employe transferred permanently from one voting group to another in the interim between the eligibility date and the date of the election be removed from the eligibility list for the first voting group but not added to the eligibility list of the second group, since as to the latter group he is in the same position as a newly hired employe. This principle is clearly applicable to the situation before us. We shall, therefore, uphold the challenge to the ballot cast by the jack-hammer man in Group 8, and the result, thereby, becomes conclusive."

It is to be noted in the instant case that on February 19, 1947, the company gave notice to Local Union 926 of the transfer of Abbott. The purpose of the notice

was to afford Local Union 926 an opportunity to correct the list of those who should be entitled to vote on the date selected for the election. Although Local 926 knew that Abbott had been taken from one voting unit and placed in another, it did not challenge this action on the part of the company, nor did it challenge Abbott's vote.

In Wayne Hale and International Brotherhood of Teamsters, Local 57 A. F. of L. and C. I. O. Local 5246, 62 NLRB 1393, the company objected to the ballot cast by a woods foreman who had been excluded from the voting group. The board held that although his vote had not been challenged, all parties in interest, including the unions, knew that he was ineligible and since the vote affected the election, a new election was ordered.

The sole question for determination, the facts of the instant case having been admitted by both parties, is whether or not the ultimate conclusion reached by the board was unreasonable, arbitrary, or illegal: Duquesne Light Company case, 345 Pa. 458, 29 A. (2d) 18.

We believe this question must be resolved affirmatively. Although the nine employes originally qualified to vote had been certified by company and union, the removal of Abbott from the voting unit by transfer to another department prior to the election made him ineligible to vote. The challenged ballot which was segregated and placed in a sealed envelope by the director of elections should not later have been opened and counted. Although it is true that the board had not been notified of Abbott's transfer prior to the election, the representative of the board, however, had notice of said change in employment status when Abbott cast his ballot. This appears in his report of said election dated March 7, 1947, filed with the board. To sustain the position that it exercised lawful discretion in directing Abbott's ballot to be counted would

be equivalent to saying that once a list of employes had been certified as qualified to vote and a stipulation to that effect entered into by company and union no change in the status of a voter on said list prior to election could ever be recognized. This seems to us unreasonable. The exception of respondent must therefore be sustained.