## Duquesne Light Company Case.

Argued September 29, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charles Lysle Seif,* of *Seif, Evashwick & Best,* for appellant.

*Albert F. Galusha,* for appellee.

OPINION BY MR. JUSTICE PARKER, November 23, 1942:

The appellant challenges the legality of an order of the Pennsylvania Labor Relations Board, dated October 29, 1941, later affirmed by a court of common pleas, designating all of the hourly-paid employees at the Colfax Power Station of the Duquesne Light Company, exclusive of supervisory and clerical employees, as the unit appropriate for the purposes of collective bargaining. The order was made pursuant to sub-section 7(b) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended by Act of June 9, 1939, P. L. 293 (43 PS 211.7). It is the contention of the appellant that there is not any substantial evidence to support the order of the board and that the operations of the utility are so closely integrated that a company wide unit formerly designated should have been continued.

The Duquesne Light Company is a utility supplying light, heat and power in Allegheny and Beaver Counties. It maintains three power plants, of which Colfax Station is the largest, and a connected distribution

system. Prior to May 15, 1940, Local Union No. 117 of the Utility Workers Organizing Committee, affiliated with the C. I. O., and the Independent Association of Employees of the Duquesne Light Company each claimed the exclusive right to represent the employees of the company. After investigation and hearing the board on that date designated the employees of the various departments of the company, except those employed in a supervisory capacity, as a single bargaining unit and certified that the majority of the employees desired the Independent Association to represent them. Contracts were made between that association and the utility.

On May 31, 1941, Local No. 117, affiliated with C. I. O., claiming to represent a large majority of the employees at Colfax Power Station in writing demanded recognition and made specific demands. The company, relying on the previous order of the board, refused to negotiate. A strike was threatened and due to the probable effect of failure to deliver power to war industries efforts at conciliation were made by a representative of the U. S. Department of Labor Conciliation Service and a state mediator. A hearing having been held by a panel of the federal Conciliation Service and a proposal for settlement having been made, Union No. 117 and the company agreed to the stipulation but it was rejected by the Independent Association. Further efforts at conciliation were made and failed. Pursuant to further recommendations the Pennsylvania State Labor Relations Board issued an order directing investigation.

A formal hearing was held by the board at which the C. I. O. union, the company and the Independent Association were represented. The board directed an election by secret ballot to be held among the 243 eligible employees at the Colfax Power Station to determine whether they desired to be placed in a separate unit apart from other employees of the company. Ballots

were cast by 222, of whom 150 voted for and 72 against the maintenance of a separate unit. Later at an election in which 225 ballots were cast, 157 voted for the C. I. O. union, 61 for the Independent Association and 6 for no union. The board then designated the separate unit and certified the C. I. O. union as a bargaining agent. On appeal a court of common pleas affirmed the order of the board.

By sub-section 7(b) of the Pennsylvania Labor Relations Act it is provided: "(b) The board shall decide in each case whether, in order to insure to employes the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, That if the majority of a craft union within a plant, or employer unit, signify its wish for a craft unit, the board shall designate the craft unit as the unit appropriate for the members of that union." Section 9 of the Act (43 PS 211.9) provides in part that "the findings of the board as to the facts, if supported by evidence, shall be conclusive" and in dealing with the subject of review in section 9(b) there is a further provision that "the findings of the board as to the facts, if supported by substantial and legally credible evidence, shall in like manner be conclusive." It is not open to argument that the conclusions reached must not be arbitrary or unreasonable.

By the very words of the act the legislature placed upon the board the duty of determining the appropriate bargaining unit. It follows that this court is limited in its review to a determination of whether the evidence presented was substantial and legally credible and whether the deductions made are unreasonable, arbitrary or illegal. As a guide to the scope of the inquiry federal and state boards as well as the United States Supreme Court have given some indication of the char-

acter of evidence which is fitting to be considered in such cases. Among these are (1) history, extent and type of the organization of the employees, (2) history of their collective bargaining, (3) a like history of the employees of other employers in the same industry, (4) relationship between any proposed unit and the employer's organization, including geographical location of the parts, and (5) skill, wages, working conditions and work of the employees: *Pittsburgh Plate Glass Co. v. N. L. R. B.*, 313 U. S. 146, 153, 61 S. Ct. 908, 913.

This furnishes a fair outline of the fundamental facts to be developed in a controversy such as the present one. Turning to the proofs we find very complete evidence, with few if any contradictions, describing the business and operation of the company with special reference to the geographical location of its operations, a history of the collective bargaining of this company, the character of the work performed by the employees and their working conditions and much evidence showing the relationship between the parties. It would not appear to be debatable that there was sufficient substantial and legally credible evidence to form the basis for a decision. The real question involved is not as contended for by the appellant, one of sufficiency of evidence, but rather whether the order made was so unreasonable, arbitrary or illegal that it cannot be sustained.

The legislature has delegated to the board authority to decide and it has provided standards or norms to guide the action of the board. It recognized the desirability of having separate units in some cases and the right of employees to have their wishes considered for, as we have seen, it was made mandatory that if a majority of a craft within an employer unit or a plant signified their desire for a craft unit, they shall have it. In enacting the statute it was declared to be the public policy of the state "to protect the exercise by workers of full freedom of association, self-organization, and

designation of representatives of their own choosing": See Dissenting Opinion, *Pittsburgh Plate Glass Co. v. N. L. R. B.,* supra, p. 172. Section 7(b) repeats the same language and makes it the basis of the board's decision. It is in accord with that purpose that the board must choose. Of course, the majority of the employees of the entire employer unit may not agree with the majority in a separate unit, as seems to be the case here, but in such a case it is for the board to decide which is in the public interest.

Without analyzing all the evidence and disregarding that which supports the appellant's view, it was shown that the C. I. O. union had in the past represented a separate unit or units, that a decided majority of the employees at the Colfax Station desired the C. I. O. union to represent them, that although the plant was an integral part of the employer's operations, it was geographically separated from the other plants. There was in the particular unit a similarity between the service rendered by the employees and their working conditions as well as their skill. While there was partisan and contradictory opinion evidence from the respective parties as to the advisability of the respective plans, it was of little value and it remained for the board as the agent of the legislature to make the decision. While there is room for honest differences of opinion as to the administrative policy adopted this was a matter for the board and the act would not be workable without it. We find no abuse of legal discretion.

We are not to be understood as intimating that there was not strong evidence supporting the view of the appellant or that we would have reached the same conclusion as the board. That is not our immediate problem or our province. We have examined the evidence only for the purpose of ascertaining whether there was sufficient evidence to support the order and can only conclude that there was sufficient data upon which to base a decision and that the action of the board was not arbitrary, unreasonable or illegal.

464

We find no merit in appellant's argument that the contractual relations between the company and the Independent Association stood in the way of the present inquiry. The contract as viewed by appellant was terminable at the end of a year on sixty days' notice. The company and the Independent Association had more than sixty days' notice that another bargaining agent was claiming the right to represent a majority of the employees in Colfax Station. To adopt the theory of appellant would permanently entrench one union and defeat the purposes of the act.

The decree of the lower court is affirmed at the cost of the appellant.