## Chapin, Appellant, v. Pennsylvania Labor Relations Board.

Argued April 14, 1947.  Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Frank P. Slattery,* with him *Thomas E. Roberts* and
*Rutledge Slattery,* for appellant.

*George L. Reed,* Solicitor for Pennsylvania Labor
Relations Board, with him *M. Louise Rutherford,* Dep-
uty Attorney General, *T. McKeen Chidsey,* Attorney
General, and *E. C. Marianelli,* for appellee.

OPINION BY MR. JUSTICE LINN, May 7, 1947:

These proceedings began by a labor union's [1] petition
to the Pennsylvania Labor Relations Board (1) com-

---

[1] The Teamsters, Chauffeurs, Warehousemen and Helpers of
America, Local No. 401, of Wilkes-Barre, Pennsylvania.

plaining that Edward G. Chapin, trading as Chapin Lumber Company at Kingston, Luzerne County, was guilty of unfair labor practices (section 6 (a) and (c) of the Act of June 1, 1937, P. L. 1168, as amended, 43 PS 211) in discharging Bernard Mulroy for engaging in labor union activities, and (2) by petitions for the certification of a collective bargaining unit, section 7 (c). In a single answer to the petitions Chapin denied the material averments. While the petitions instituted separate proceedings, they were related and were heard and disposed of together. Evidence was presented on behalf of both sides. The board held Chapin guilty of unfair labor practices and ordered him to desist,[2] etc. The board also ordered an election for representatives for collective bargaining.

Chapin Lumber Company then removed the proceedings to the common pleas of Luzerne County for review pursuant to section 9 which provides: "(b) Any person aggrieved by a final order of the board granting or denying, in whole or in part, the relief sought, may obtain a review of such order in the court of common pleas of any county where the unfair labor practice in question

---

[2] "That Edward Chapin, trading and doing business as Chapin Lumber Company, shall:

1. Cease and desist from interfering with, restraining and coercing his employes in the exercise of their rights guaranteed by the Pennsylvania Labor Relations Act.

2. Cease and desist from discriminating in regard to tenure or condition of employment to discourage membership in any labor organization.

3. Take the following affirmative action which the Board finds will effectuate the policies of the Pennsylvania Labor Relations Act:

(a) . . .

(b) Post a copy of this Decision . . .

(c) Furnish satisfactory evidence to the Pennsylvania Labor Relations Board, by affidavit or affidavits, of compliance with this Decision and Order within twenty days from the effective date hereof."

was alleged to have been engaged in, or wherein such person resides or transacts business by filing in such court a written petition praying that the order of the board be modified or set aside." After hearing, the court affirmed the findings and orders of the board and remanded the election proceeding to the board for completion.[3] Chapin Lumber Company appeals from that order.

The order of the board requiring Chapin to cease unfair labor practices was a final order, subject to review by the common pleas. In this case, however, we also have the order directing an election. Ordinarily an order directing an election is not final but interlocutory; if, in this review, the order for the election stood alone it would not have been subject to review in the common pleas because section 9 makes no provision for appeals from interlocutory orders. Where, however, the proceeding involves a finding of unfair labor practice, reviewable because final, and also includes a proceeding to certify bargaining representatives, the two may be so related that a review of the order to cease unfair practices may require the examination of the record in the certification proceedings. As the two proceedings against the appellant were heard and disposed of together and bear on each other we have considered the entire record: compare *N. L. R. B. v. Falk Corp.,* 308 U. S., 453, 459, 60 Sup. Ct. 307; *Utah Copper Co. v. N. L. R. B.,* 136 F. 2d 485 (C. C. A. 10th, 1943); *Employees Protective Association v. N. L. R. B.,* 147 F. 2d

---

[3] "Now, 16th day of April, 1946, the findings and orders of the Pennsylvania Labor Relations Board are affirmed and, in accordance with this decision, Cases Nos. 48 and 51, Year of 1945, are remanded to the board to complete its investigation to the end that it may certify to the parties in writing the name or names of the representatives who have been designated or selected by employees, in accordance with section 7, clause (c) of the Pennsylvania Labor Relations Act."

684 (C. C. A. 4th, 1945); *Warehousemen's Union, Local 117, etc. v. N. L. R. B.*, 121 F. 2d 84 (C. C. A. Dist. Col. 1941).

The difficulty with the appellant's position on the charge of unfair labor practices is that the board, in the exercise of a power conferred on it, has found the facts against him. The Act as amended June 9, 1939, P. L. 293, section 9 (b), P. L. 300, 43 PS 211.9, provides: ". . . and the findings of the board as to the facts, if supported by substantial and legally credible evidence, shall in like manner be conclusive." Appellant thinks Chapin's testimony should have been accepted and the evidence on behalf of petitioner rejected by the board; but his evidence is contradicted in important particulars; some tribunal had to find the facts. "It is the function of the board" we said in *P. L. R. B. v. Kauffman Department Stores, Inc.*, 345 Pa. 398, 400, 29 A. 2d 90, "not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances." See also *Pisarev Co. v. Amalgamated Meat Cutters, etc.*, 345 Pa. 123, 27 A. 2d 52; *Duquesne Light Co. Case*, 345 Pa. 458, 29 A. 2d 18. From our reading of the evidence in the light of the arguments presented on behalf of the appellant, we cannot say that the findings complained of are not supported by substantial and legally credible evidence; there is sufficient evidence, if believed, to support the findings. The result is that we must affirm the order at the board's number 50, year of 1945, sustaining the charge of unfair labor practices.

On this branch of the case an important question of fact was whether, as the board found, Bernard Mulroy was discharged for labor union activities or whether he was discharged, as the appellant employer claimed, for "drinking, smoking in the lumber yard, and taking his children back and forth on the truck." Before he was

discharged, he had applied for membership in the union and solicited at least three other of the ten men said to have been in appellant's employ. On July 20, 1945, the union wrote to Chapin Lumber Company stating that a majority of its employes "are now [4] members of the above stated organization." Three days later Chapin directed his foreman to discharge Mulroy who had been in his employ thirteen months. There was evidence that Mulroy had not been drinking while on duty and that Chapin had not complained that Mulroy took one of his children on the truck. Mulroy also denied that any objection had been made to smoking in the yard, stating, "Why should Mr. Chapin single me out when everyone there but Leo smoked." This of course is not all the evidence on the subject but it indicates the nature of the problem before the board. In its report the board said: "Relative to the dismissal of Bernard Mulroy, we are not impressed with the testimony of the Company that he was dismissed for excessive drinking, for smoking while at work and, on several occasions, permitting his child to ride with him on the Company's truck. The Company admitted that he was never intoxicated while at work. The weight of the testimony clearly indicates that other employes smoked as frequently and as much as Bernard Mulroy. None of these were dismissed. They, as well as Bernard Mulroy, were never told not to smoke by any of their supervisors. The riding of Bernard Mulroy's child on the truck is a trivial matter. Bernard Mulroy did this openly and, on one occasion, after such a ride, Edward Chapin gave the child twenty-five cents. Edward Chapin never told Bernard Mulroy to cease this practice and we do not attach any significance thereto.

"On the other hand, the evidence establishes that Bernard Mulroy was active in the affairs of the Union; that he solicited and caused three employes to sign cards

---

[4] At that time they had merely signed applications for membership.

applying for membership therein; that he signed such a card himself; that he was asked by Edward Chapin whether he had 'signed up' for the Union and whether any of the 'other boys had joined up'; that he was told by Edward Chapin that 'he was kind of active' and that 'before you join the union let me know.' The evidence further establishes that on July 23, 1945, the representative of the Union called upon Edward Chapin, informed him that the 'majority of his people had signed'; asked him why he had received no reply to his registered letter seeking a conference for the purpose of bargaining collectively, and that Edward Chapin replied, 'We will have no union here. We don't need a union.' On the same day, without giving any reason, Bernard Mulroy was dismissed. We are convinced that Bernard Mulroy's employment was terminated because of his activities on behalf of the Union and for the purpose of discouraging membership therein." After hearing argument on exceptions, the board, in an opinion dismissing the exceptions said with respect to the same subject, "We have found upon substantial and legally credible evidence that prior to July 17, 1945, Mulroy solicited six of the employes to affiliate themselves with the union, and persuaded three of the employes to sign cards applying for membership. On July 20, 1945, Employer had notice that a majority of his employes in the Kingston yard had joined the union. On July 21, 1945, Employer informed Mulroy that he was kind of active and said 'before you join the union, let me know.' On July 23, 1945, Employer advised the union representative that 'we will have no union here. We don't need a union.' On that same day Mulroy was dischargd by the manager of Employer, who gave Mulroy his pay check in full for services. The manager gave no explanation as to the reason for the discharge. Furthermore, July 23, 1945, was not the pay day, as Employer paid the employes on the first and sixteenth days of each month. On the following day, July 24, 1945, the business agent

of the union, in the presence of Mulroy, asked Employer why Mulroy had been dismissed. Employer gave no reason and refused to put Mulroy back to work. It further appears that Mulroy had worked for Employer for thirteen months, and Mulroy had received no complaint from Employer regarding the performance of his work.

"This case comes squarely within the rule of Max Pisarev Co. v. Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 195, 345 Pa. 123, wherein it appeared that the employer had discharged an employe namely, Biery, allegedly because Biery had negligently performed his duties. The Board found from the attendant circumstances that the discharge was actually because of Biery's known union membership and activity." Compare *N. L. R. B. v. Newark Morning Ledger Co.,* 120 F. 2d 262 (C.C.A. 3rd, 1941); *N. L. R. B. v. Clinton Woolen Mfg. Co.,* 141 F. 2d 753 (C. C. A. 6th, 1944); *N. L. R. B. v. Collins & Aikman Corp.,* 146 F. 2d 455 (C. C. A. 4th, 1944).

It is unnecessary to refer in detail to the evidence on which the board ordered the election. From the contradictory evidence as to who was an employe in the Kingston lumber yard and who was not, it was the duty of the board to make its findings. With respect to the fact that the Chapin Lumber Company had a plant at Kingston, in Luzerne County, another in Scranton, in Lackawanna County, and a third in Temple, in Berks County, it is sufficient at this time to say that it was discretionary with the board to determine the appropriate collective bargaining unit: compare *Duquesne Light Company's Case,* 345 Pa. 458, 461, 29 A. 2d 18. There is nothing to show abuse of discretion.

Order affirmed and record remitted that it may be complied with; costs to be paid by appellant.