Pennsylvania Labor Relations Board *v.*
Henry, Appellant.

Argued January 3, 1949. Before Maxey, C. J., Drew, Stern, Patterson, Stearne and Jones, JJ.

*James P. Costello, Jr.,* for defendant employer, appellant.

*George L. Reed,* with him *M. Louise Rutherford,* Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for Pennsylvania Labor Relations Board, appellee.

*Joseph R. Sherman,* for National Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, A. F. L. Local No. 297, intervenors.

OPINION BY MR. JUSTICE JONES, March 21, 1949:

The principal question raised on this appeal calls for an interpretation of certain sections of the Pennsylvania Labor Relations Act of 1937 as amended.[1] The appellant-employer contends that the state Labor Relations Board is without authority, in a hearing upon a complaint charging unfair labor practices, to certify an appropriate collective bargaining unit for any portion of the employer's plant. The appellant argues that, inasmuch as a "charge" proceeding and a "certification" proceeding involve distinct inquiries, it is the intend-

---

[1] Secs. 7 and 8 of the Act of June 1, 1937, P. L. 1168, as amended by the Act of June 9, 1939, P. L. 293, etc., 43 PS §§ 211.7 and 211.8.

ment of the statute that a certification be made only in a separate proceeding, instituted for that purpose alone, upon due notice to the employer and after an independent hearing and investigation with respect to what constitutes an appropriate bargaining unit in the premises. On the merits, the appellant further contends that the evidence in the case is insufficient to support the board's finding as to the appropriateness of the unit certified by the board for collective bargaining purposes. The material facts are as follows.

On charges of unfair labor practices lodged with the state Labor Relations Board by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 297, an A. F. of L. affiliate (hereinafter referred to as "union"), against William A. Henry, trading and doing business as Henry Laundry Company (hereinafter referred to as "employer"), the board filed a complaint against the employer on the basis of the charges. After a hearing on the complaint, the board found the charges to be sustained by the evidence and, accordingly, entered a cease and desist order. It is unnecessary to detail the cited unfair practices; the employer no longer complains of the board's findings in such regard. Rather, his complaint is with the procedure followed by the board of certifying, in a charge proceeding, a specified unit as appropriate for collective bargaining purposes.

The employer, in the operation of his business, employs aggregately one hundred and five persons, viz., forty-four in the laundry department, two sewing girls, four office girls, eleven truck drivers (who make collections and deliveries of laundry and dry cleaning) and forty-four in the dry cleaning department. At a former time and as the result of an election conducted by the board, the union had been duly certified as the bargaining agent of the employer's truck drivers. Subsequently, membership cards in the union were signed by twenty-

six of the forty-six laundry workers and sewing girls so that the union had come to represent a majority of *the laundry workers and sewing girls.* A specific finding of the board, to which the employer has not excepted, conclusively so established. It was in connection with the union's attempted representation of the employes last above-mentioned that the employer committed the practices whereof the union made formal complaint and to which the employer defended by asserting that the union did not represent a majority of the employer's workers, meaning, of course, the entire group of one hundred and five. Thus, the complaint and answer directly presented an issue, in relation to the charge of unfair labor practices, as to whether the laundry division constituted an appropriate bargaining unit.

Sec. 8 of the Pennsylvania Labor Relations Act empowers the board to prevent (and prescribes the procedure for preventing) the commission of unfair labor practices, as defined by Sec. 6 of the Act (43 PS § 211.6). Sec. 7(a) deals with exclusive representatives, designated or selected by a majority of the employes, in a unit appropriate for the purposes of collective bargaining; Sec. 7(b) vests the board with authority to "decide in each case whether, in order to insure to employes the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . ."; and Sec. 7(c) provides that "Whenever a question arises concerning the representation of employes the board may, and, upon request of [certain specified interested parties] shall investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected. In any such investigation, the board shall provide for an appropriate hearing upon due notice,

*either in conjunction with a proceeding under section eight,* or otherwise, *and may utilize any suitable method* to ascertain such representatives, . . . ." (Emphasis supplied.)

On the basis of the above-quoted provision of Sec. 7(c), the employer contends that, once the question concerning the appropriate representation unit arose in the "unfair labor practices" proceeding, it was the duty of the board forthwith to embark upon an independent investigation of the representation question in a separate hearing upon due notice to the employer of the particular inquiry. We find no such intent in the statute, much less any such requirement. Whether the workers in the laundry department (including the sewing girls) constituted an appropriate bargaining unit was inherently an issue in the "unfair labor practices" charge and was for the board's determination in that proceeding: see *National Labor Relations Board v. Lettie Lee, Inc.,* 140 F. 2d 243, 248 (C. C. A. 9). In similar legal circumstances, the National Labor Relations Board has made "appropriate bargaining unit" determinations in "unfair labor practices" cases where the employer has defended against the latter charges on the ground that he was not compelled to bargain collectively with a union because the unit so represented was inappropriate: see *National Labor Relations Board v. Griswold Mfg. Co.,* 106 F. 2d 713, 717 (C. C. A. 3); *National Labor Relations Board v. Biles Coleman Lumber Co.,* 98 F. 2d 18, 20-21 (C. C. A. 9). The situation was well described by Judge (now Mr. Justice) RUTLEDGE in *Warehousemen's Union, Local 117 etc. v. National Labor Relations Board,* 121 F. 2d 84, 94 (Ct. App. D. C.), as follows: "Generally representation and unfair practice proceedings are distinct, both in issues and the relief sought. Procedure and evidence also differ. But they may and often do overlap. Representation may be involved and

determined in unfair practice proceedings . . . and unfair practices may affect representation."

In this case the board cogently pointed out in its final decision that the employer's ". . . objection overlooks the fact that we must make a unit determination in order to decide whether there was a refusal to bargain collectively. Obviously, if, as [the employer] contends, the unit should comprise all the non-supervisory employes of the plant, there was no refusal to bargain collectively because Union did not claim to represent a majority of all plant employes. If, on the other hand, a unit comprising the laundry department employes and the two sewing girls is appropriate, Union had the majority and should have been bargained with. It is certain that we had the power to make a finding as to the appropriate unit so that a determination of the charge of unfair labor practice could be made; and that the determination of such fact is an essential element in the case." We approve that conclusion; its correctness is self-evident and needs no further justification.

The cases of *Shafer Petition*, 347 Pa. 130, 136, 31 A. 2d 537, *Koehler's Petition*, 92 P. L. J. 587, and *Brotherhood and Union of Transit Employees of Baltimore v. Madden*, 58 F. Supp. 366, cited by the appellant, are not in point. None holds to greater effect than that the particular labor board involved was a creature of statute and had to point to statutory authority for its action in any given instance. There can, of course, be no dispute about that. But, it is equally clear that the board's power to determine an appropriate bargaining unit in a charge proceeding, where such a finding is relevant and material to the principal issue, is but a logical attribute of the authority conferred upon the board by the statute and is not to be whittled away by strained or restricted reasoning in evident frustration of the beneficent purposes of the Act: cf. *Wallace Corporation v. National Labor Relations Board*, 323 U. S. 248. The

*Duquesne Light Company Case,* 345 Pa. 458, 462, 29 A. 2d 18, which the appellant cites as authority for the type of evidence proper for the board's consideration in determining a representation question, actually holds (pp. 462-463) that the criterion of a valid exercise of the board's cognate power is whether the determination is in the public interest and in effectuation of the purposes of the Act.

The appellant's remaining contention that the evidence does not support the board's finding that the workers in the laundry department (including the two sewing girls) constituted an appropriate bargaining unit does not require any extended discussion. The evidence taken before the board has not been printed. In lieu thereof, respective counsel for the board and for the employer have stipulated that a specified excerpt from the opinion of the court below shall constitute "the testimony pertaining to the appropriate bargaining unit." From the facts so appearing, it is clear that the conclusion of the board on the particular issue is supported by substantial evidence. Indeed, there was no dispute of any material fact. As the learned court below pertinently observed, "The only question raised throughout the proceedings was whether the appropriate unit should be the laundry unit, or, as the employer contended, the whole plant." Thus it appears that the employer contented himself by merely asserting his own bald conclusion as to what constituted an appropriate bargaining unit in the circumstances,—a determination that, "by the very words of the Act [Sec. 7(b)]," the legislature committed to the board's discretion (*Duquesne Light Company Case,* supra, at p. 461). The exercise thereof is reviewable only for an abuse (*Chapin v. Pennsylvania Labor Relations Board,* 356 Pa. 577, 584, 52 A. 2d 568) and no such abuse is shown by the record in this case.

The order is affirmed at the appellant's costs.