# Pennsylvania Labor Relations Board v. Hanover Cab Co., Inc.

374

*T. McKeen Chidsey,* Attorney General, *M. Louise Rutherford,* Deputy Attorney General, and *George L. Reed,* Solicitor, for Pennsylvania Labor Relations Board.

*Norman T. Petow,* for appellant.

*Sidney G. Handler,* and *Markowitz & Liverant,* for Teamsters and Chaffeurs Local Union.

SHERWOOD, P. J., July 3, 1950.—The petition for review presently before the court is a statutory proceeding in the nature of an appeal pursuant to section 9 (*b*) of the Act of June 1, 1937, P. L. 1168, commonly known as the Pennsylvania Labor Relations Act. This subsection, as amended by the Acts of June 9, 1939, P. L. 293, May 26, 1943, P. L. 651, and May 18, 1945, P. L. 656, is to be found in 43 PS §211.9.

The appeal of Hanover Cab Company, Inc., hereinafter called the employer, asks review of a decision and order of the Pennsylvania Labor Relations Board wherein the employer was ordered and directed to cease and desist from certain unfair labor practices; to offer John Jacoby, Victor Becker, Donald Henry, Bill Hanson and Robert Bigham full reinstatement to their former positions with certain back pay; upon demand to bargain collectively with International Brotherhood of Teamsters, Chaffeurs, Warehousemen and Helpers of America, Local Union No. 430, hereinafter called the union, as the exclusive bargaining representative designated or selected by the employes in an appropriate unit; to post a copy of the decision and order; and to furnish satisfactory evidence of compliance by affidavit or affidavits.

The proceedings before the Pennsylvania Labor Relations Board were initiated through charges of unfair

labor practices filed by the union against employer. Upon these charges a complaint issued by the board and a hearing was ordered to be held on April 11, 1949.

After hearings, the Pennsylvania Labor Relations Board issued a nisi decision and order on May 31, 1949, and an order amending the nisi decision and order on June 9, 1949.

The employer filed exceptions to the nisi decision and order. The employer also filed a petition for an additional hearing to present additional testimony in support of its exceptions and on July 18, 1949, the board issued an order fixing July 28, 1949, as the time and place for oral argument. The union filed an answer to the petition for additional hearing.

After oral argument the board fixed September 26, 1949, for the taking of additional testimony. After taking additional testimony the board, on November 15, 1949, issued its final decision and order dismissing all exceptions to the nisi decision and order and order of May 31, 1949, and making the said decision and order absolute and final. The final decision and order of the board is as follows:

### Order

"The Pennsylvania Labor Relations Board, therefore, after due consideration of the foregoing and the record as a whole,

"Hereby orders and directs that Hanover Cab Co., Inc., shall:

"1. Cease and desist from, in any manner interfering with, restraining or coercing its employes in the exercise of their rights to self-organization and collective bargaining within the meaning of section 6, subsection 1, clause (*a*) of the Pennsylvania Labor Relations Act.

"2. Cease and desist from discharging or laying off employes, refusing to give them employment or in any

manner discriminating in regard to hire or tenure of employment or the terms or conditions of employment to discourage membership in the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 430.

"3. Take the following affirmative action which the board finds will effectuate the policies of the Pennsylvania Labor Relations Act:

"(a) Offer John Jacoby, Victor Becker, Donald Henry, Bill Hanson and Robert Bigham full reinstatement to their former positions without prejudice to any rights or privileges previously enjoyed by them and without any discrimination against them by reason of their membership in the union, or any other labor organization, and pay them back wages equal to the amount which each of them would have earned from the date of their respective discharges, to the date of the offer of reinstatement, less the amounts actually earned or losses wilfully incurred by each during such period.

"(b) Upon demand, bargain collectively with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 430, a labor organization, as the exclusive bargaining representative designated or selected for the purposes of collective bargaining in regard to rates of pay, wages, hours of employment or other conditions of employment, by a majority of the employes in a unit consisting of cab drivers and dispatchers, exclusive of supervisory employes, at the place of employment of Hanover Cab Co., Inc., at Hanover, York County, Pa.

"(c) Post in a conspicuous place, readily accessible to the employes at the place of business of Hanover Cab Co., Inc., at Hanover, Pa., a copy of this decision and order within five days from the effective date hereof, and have the same remain posted for a period of 10 consecutive days.

"(d) Furnish satisfactory evidence to the Pennsylvania Labor Relations Board, by affidavit or affidavits, of compliance with this order within 20 days from the effective date hereof.

"And it is hereby further ordered and decreed that in the absence of any exceptions filed within 10 days from the date hereof, this decision and order shall become and be absolute and final."

Upon petition for appeal, the court, on January 10, 1950, directed the Pennsylvania Labor Relations Board to file with the prothonotary a certified transcript of the entire record of the proceedings in its case no. 47, year of 1949, including the pleadings, testimony, evidence, exhibits, motions, and orders of the board, and exceptions thereto and granted a rule upon the board to show cause why its final decision and order of November 15, 1949, should not be vacated and set aside and the original charge in the case be dismissed. The Pennsylvania Labor Relations Board filed an answer to the rule asking that the rule be dismissed and also filed a petition for enforcement of the final order of the board.

The board in due course filed in the local court the entire record of the proceedings had before it resulting in the final order hereinbefore set forth. On February 28, 1950, a rule was granted by the court to show cause why the Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 430, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (AFL) should not be permitted to intervene. The rule was duly served upon the board and upon the employer, Hanover Cab Co., Inc. No answer being filed, the rule was made absolute.

These proceedings present the following questions for the court's determination:

1. Has the Pennsylvania Labor Relations Board made findings and stated conclusions based upon substantial and legally credible evidence?

2. Has the Pennsylvania Labor Relations Board issued an order which effectuates the policies of the Pennsylvania Labor Relations Act?

3. Should the final order of the Pennsylvania Labor Relations Board be enforced by the court?

The position of the board is that argument in support of the petition for enforcement, rather than upon the appeal, is proper legal practice. This would be in accord with the rule laid down by the Supreme Court of the United States in Ford Motor Co. v. National Labor Relations Board, 305 U. S. 364, 369, 371 (1939), wherein Chief Justice Hughes said:

"While §10 (f) assures to any aggrieved person opportunity to contest the Board's order, it does not require an unnecessary duplication of proceedings. The aim of the Act is to attain simplicity and directness both in the administrative procedure and on judicial review. Where the Board has petitioned for enforcement under Section 10 (e) and the jurisdiction of the court has attached, no separate proceeding is needed on the part of the person thus brought into the court. The breadth of the jurisdiction conferred upon the court to set aside or modify in whole or in part the Board's order, or to permit new evidence to be taken, necessarily implies that the party proceeded against is entitled to raise all pertinent questions and to obtain any affirmative relief that is appropriate. . . . As on the Board's petition the court could grant affirmative relief to the person against whom the Board's order was directed, so on the court's entertaining the petition of that person for review the Board could seek not merely to have the petition denied but to have its order enforced, regardless of any separate proceeding to that end."

To the same effect is In re Metropolitan Life Insurance Company, 48 D. & C. 321 (1943), a decision of the Court of Common Pleas No. 6 of Philadelphia County. At page 325 Judge Levinthal said:

"The counter-petition for enforcement filed by the Board we shall treat as an original petition for enforcement. We apprehend that the right so to do is a matter of judicial discretion. This brings us to the second question herein: May a petition for enforcement be filed before the final disposition of a petition for review? In Foster et ux. v. International Brotherhood of Teamsters, Chauffeurs, etc., 45 D. & C. 591 (1942), the Court of Common Pleas of Washington County, in a *per curiam* opinion, denied the right of the board to file its petition for enforcement while the petition for review was pending. In Metropolitan Life Ins. Co. v. Insurance Guild (No. 1), 48 D. & C. 355, the facts of which were substantially the same as those of the instant case, Judge Carroll disagreed with the Foster case and held that the board may seek to enforce its order even before the final adjudication of the petition for review. With this we are in accord. To hold otherwise would provoke a speed contest between the board and the aggrieved party, wherein each would endeavor to file its petition first. We do not think the legislature intended to make the time during which the board may file its petition for enforcement depend upon the celerity with which it acted."

We hold that the board may seek to enforce its order even before the final adjudication of the petition for review.

In defining the scope of judicial review upon appeals from the National Labor Relations Board, it was said by Mr. Justice Black in National Labor Relations Board v. Bradford Dyeing Assn., 310 U. S. 318, 342, 343 (1940):

"Congress has placed the power to administer the National Labor Relations Act in the Labor Board, subject to the supervisory powers of the Courts of Appeals as the Act sets out. If the Board has acted within the compass of the power given it by Congress, has, on a charge of unfair labor practice, held a 'hearing,' which the statute requires, comporting with the standards of fairness inherent in procedural due process, has made findings based upon substantial evidence and has ordered an appropriate remedy, a like obedience to the statutory law on the part of the Court of Appeals requires the court to grant enforcement of the Board's order. Until granted such enforcement, the Board is powerless to act upon the parties before it. And the proper working of the scheme fashioned by Congress to determine industrial controversies fairly and peaceably demands that the courts quite as much as the administrative body act as Congress has required."

That this is the rule applicable to appeals from final orders of the Pennsylvania Labor Relations Board is the decision of the Court of Common Pleas of Luzerne County, speaking through Judge Flannery in Pennsylvania Labor Relations Board v. Oestreicher, 39 Luz. 27, 34 (1945).

In paragraph 15 of the petition for appeal it is asserted by the employer that the final order and findings of the board are not supported by legally competent and proper evidence and are based upon assumptions and inferences improperly drawn from the testimony, and, as such, are arbitrary, discriminatory and unjust.

Likewise, it will be found that all of the exceptions filed by the employer before the board complain of specific findings of fact and conclusions drawn from the findings of fact. There are 14 exceptions. Exceptions 1, 2, 3, 4, 9, 10, 11, 12, and 13 complain of specific findings of fact. It is asserted that the findings are not supported by substantial and legally credible evidence.

The board properly dismissed the exceptions just mentioned because each finding contains a page reference to the testimony where the supporting evidence is to be found. They need not be considered ad seriatim as the findings are proper and supported by the substantial and legally credible evidence which the Pennsylvania Labor Relations Act commands.

Exceptions 5, 6, 7, and 14 complain of the board's conclusions nos. 3, 5, 6, and 7, respectively, and exception 8 complains of the nisi decision and order in its entirety. These exceptions will be considered separately.

The board has found that a subdivision of the employer unit embracing all regular cab drivers and regular dispatchers employed in the operation of the business and numbering 19, is a unit appropriate for collective bargaining. This conclusion was objected to for the alleged reason that there is no credible evidence to support it.

Authorities need not be multiplied to support the correctness of this conclusion as Pennsylvania Labor Relations Board v. Henry, 361 Pa. 565 (1949) is directly in point. It was urged before the Court of Common Pleas of Luzerne County and before the Supreme Court that the board was without power to make a unit determination in a case involving charges of unfair labor practices. Mr. Justice Jones said, at pages 569, 570:

". . . 'Generally representation and unfair practice proceedings are distinct, both in issues and the relief sought. Procedure and evidence also differ. But they may and often do overlap. Representation may be involved and determined in unfair practice proceedings . . . and unfair practices may affect representation.'

"In this case the board cogently pointed out in its final decision that the employer's '. . . objection over-

looks the fact that we must make a unit determination in order to decide whether there was a refusal to bargain collectively. Obviously, if, as (the employer) contends, the unit should comprise all the non-supervisory employes of the plant, there was no refusal to bargain collectively because Union did not claim to represent a majority of all plant employes. If, on the other hand, a unit comprising the laundry department employes and the two sewing girls is appropriate, Union had the majority and should have been bargained with. It is certain that we had the power to make a finding as to the appropriate unit so that a determination of the charge of unfair labor practice could be made; and that the determination of such fact is an essential element in the case.' We approve that conclusion; its correctness is self-evident and needs no further justification."

In Duquesne Light Company Case, 345 Pa. 458 (1942), the Supreme Court named certain factors to be considered by the board in making a unit determination in a certification case, where there are rival claims as to the proper unit for collective bargaining. This case, however, has no application to the instant case as the object of the unit determination in a case involving a charge of refusal to bargain collectively is to determine whether the unit for which bargaining was demanded is an appropriate unit within the meaning of the act. As was said by Mr. Justice Parker in Duquesne Light Company Case, supra:

". . . The real question involved is not as contended for by the appellant, one of sufficiency of evidence, but rather whether the order made was so unreasonable, arbitrary or illegal that it cannot be sustained."

This is the interpretation given to the Duquesne Light Company Case by Mr. Justice Jones in Pennsylvania Labor Relations Board v. Henry, supra. The court says at pages 570, 571:

". . . The Duquesne Light Company Case, . . . actually holds . . . that the criterion of a valid exercise of the board's cognate power is whether the determination is in the public interest and in effectuation of the purposes of the Act."

For these reasons the exception to conclusion no. 3 will be dismissed.

Conclusion no. 6 that the employer discriminated against five employes, to wit, John Jacoby, Victor Becker, Donald Henry, Bill Hanson, and Robert Bigham, by terminating their employment because of their membership in and activities on behalf of the union and for the purposes of discouraging membership therein is challenged upon the mere assertion that there is no credible and substantial evidence to support it. In a very recent decision, National Labor Relations Board v. Electric City Dyeing Co., 178 F.(2d) 980, 982, 983 (1950), it was said by Goodrich, J., in delivering the opinion of the United States Court of Appeals for the Third Circuit that:

"As we said in N.L.R.B. v. Condenser Corp. of America, an 'employee may be discharged by the employer for a good reason, a poor reason or no reason at all, so long as the terms of the statute are not violated.' 3 Cir., 1942, 128 F.(2d) 67, 75. We are concerned here, as in the Condenser case, with a question of fact concerning human motives, 'namely, the real reason for the discharge.' 128 F.(2d) at page 74. If the record permits conflicting conclusions as to the real reason for the discharges, we may not disturb a permissible conclusion reached by the Board.

". . . Moreover, it matters not that for reasons apart from union activity an employee deserves summary discharge if as a fact the reason was union activity. Edward G. Budd Mfg. Co. v. N.L.R.B., 3 Cir. 1942, 138 F.(2d) 86, 90, *certiorari* denied, 1944, 321 US 778, 64 S. Ct. 619, 88 L. Ed. 1071."

As a result of the decision of the Supreme Court of the United States in National Labor Relations Board v. Nevada Consol. Copper Corporation, 316 U. S. 105 (1942), it has been held by courts that the board is justified in drawing one of two inconsistent inferences from evidence. The Supreme Court said in a per curiam opinion that:

"Examination of the record discloses that there was substantial evidence from which the Board could have concluded that respondent's refusal to employ the men was motivated by its belief that they had engaged or threatened to engage in destruction of respondent's property and had threatened to injure some of respondent's managerial employees and members of their families. There was also substantial evidence from which the Board could have concluded, as it did, that respondent's motive for refusing the employment was discouragement of membership in a labor union. The possibility of drawing either of two inconsistent inferences from the evidence did not prevent the Board from drawing one of them, as the court below seems to have thought.

"We have repeatedly held that Congress, by providing, Section 10(c), (e) and (f), of the National Labor Relations Act, that the Board's findings 'as to the facts, if supported by evidence, shall be conclusive,' precludes the courts from weighing evidence in reviewing the Board's orders, and if the findings of the Board are supported by evidence the courts are not free to set them aside even though the Board could have drawn different inferences."

Likewise it is well settled by judicial authority that the board's inquiry centers upon the motivating cause of the discharge. As was said by President Judge MacDade of the Court of Common Pleas of Delaware County in Lane's Apparel Shops, Inc., 32 Del. Co. 115, 121, 122 (1943):

". . . Motive is the decisive factor, and is the persuasive interpreter of equivocal conduct. An essential prerequisite to the application of Section 6, subsection 1, clause (c) of the Act is the finding that at least one motive behind the alleged discriminatory acts of the employer was to discourage membership in a labor organization. The board reasonably inferred, from its findings, that the respondent was apprehensive of the inroads that the labor organization might make in its relationship with its employes, and the discharge of Dorothy M. Rivage was an effort on the part of the respondent to thwart the unionization of its employes, as was also the respondent's refusal to meet with the representatives of the labor organization and to negotiate a contract for purposes of collective bargaining. . . .

" 'The inquiry centers upon the motivating cause of the respondent's action and, as was said in NLRB v. Waumbec Mills Inc., 114 Fed. 2d 226, the statutory test is whether the applicant was rejected or the employe discharged on account of Union membership or activity or on account of some permissible criterion. See also NLRB vs. Blue Bell Globe Mfg. Co., 120 Fed. 2d 974.

" 'In Martel Mills Corp., v. National Labor Relations Board, 114 F. 2d 624, the court said at page 631:

" ' "We do not lose sight of the fact that our inquiry is centered upon the motivating cause of the employer's action. The task is a difficult one. It involves an inquiry into the state of mind of the employer. . . ." ' "

Applying these principles to the instant case, it is clear that the board found the discharges of Jacoby, Becker, Henry, Hanson, and Bigham, five of the employer's drivers, to have been in violation of section 6(1) (c) of the act. It is not disputed that they were employes on February 15, 1949, when they attended

a meeting presided over by Wilbert Godfrey, president of the union. With five other employes, they signed authorization cards which were received by the union on February 19, 1949. On February 21, 1949, the union sent a telegram demanding collective bargaining which was delivered by Jacoby on that date. On that same evening Jacoby, Becker, Hanson and Henry were discharged. On the following morning, February 22, 1949, Bigham was discharged. These discharges were made by Lester H. Frock, president of the company. Mr. Frock admits that he fired Henry, but he denies firing Jacoby, Bigham, Hanson and Becker. He also admits firing Bollinger, who was named in the complaint. Mr. Frock has suggested that Bollinger was fired because he was dishonest. It is suggested that Henry was fired because he came to the office after drivers had been warned not to go there. The excuse for the firing of Bigham was an alleged failure to report for work on Sunday on time. We can find no explanation on the part of the employer for the discharge of Becker, Hanson and Jacoby.

On the other hand, the findings of the board show a pattern of making discharges which proves conclusively that union membership or activity and a purpose of discouraging membership in union motivated each discharge. When Jacoby, Becker and Hanson reported for work on the evening of February 21, 1949, they were met by Mr. Frock and were asked concerning their relation to the union. They replied that they had signed cards and Mr. Frock said: "We have no more use for you fellows who want the union, come around and get your pay." These men went to the pay office forthwith and they received cash in an envelope.

Also on the evening of February 21, 1949, when Henry reported for work, Mr. Frock asked him how he felt and if he had signed a union card and when

Henry replied that he had, Mr. Frock said there was no job for him and his pay was put up on the desk and he was fired.

Bigham reported for work on the morning of February 22, 1949. This was about 5 a.m. and Mr. Frock came into the office and said to Bigham, "What do you know about the union?" to which Bigham replied, "I signed the card, like the rest of the fellows." Frock then said, "Well, we are not foreigners around here, we are Americans." Bigham had no pay coming, so Frock said, "We don't need you any more".

In view of the fact that on February 21, 1949, there were 16 regular cab drivers and three regular dispatchers (finding 4), and 10 had signed union cards (finding 3), it is apparent that the motivating cause of such discharge was to discourage union membership.

The board has acted upon more than an inference. In fact, the illegal character of the discharges is admitted by Mr. Frock himself.

That the Pennsylvania Labor Relations Board made its findings of discriminatory discharge upon substantial and legally credible evidence is apparent when consideration is given to National Labor Relations Board v. Tex-O-Kan Flour Mills Co., 122 F.(2d) 433, 438, 439 (1941), a decision of the United States Circuit Court of Appeals for the Fifth Circuit, wherein it was said by Sibley, J.:

". . . In the matters now concerning us, the controlling and ultimate fact question is the true reason which governed the very person who discharged or refused to reemploy in each instance. There is no doubt that each employee here making complaint was discharged, or if laid off was not reemployed, and that he was at the time a member of the union. In each case such membership may have been the cause, for the union was not welcomed by the persons having authority

to discharge and employ. If no other reason is apparent, union membership may logically be inferred. Even though the discharger disavows it under oath, if he can assign no other credible motive or cause, he need not be believed. But it remains true that the discharger knows the real cause of discharge, it is a fact to which he may swear. If he says it was not union membership or activity, but something else which in fact existed as a ground, his oath cannot be disregarded because of suspicion that he may be lying. There must be impeachment of him, or substantial contradiction, or if circumstances raise doubts, they must be inconsistent with the positive sworn evidence on the exact point."

There has been substantial contradiction of the employer's testimony and there are circumstances which raise doubts as to the truthfulness of the employer's allegation that the discharges were not for union membership or activities.

Likewise, the instant case comes squarely within the decisions of the Supreme Court in Max Pisarev Co. v. Amalgamated Meat Cutters and Butcher Workmen of America, Local No. 195, 345 Pa. 123 (1942) and Chapin v. Pennsylvania Labor Relations Board 356 Pa. 577 (1947).

In the Max Pisarev Co. case, in a per curiam decision, the Supreme Court said at pages 124 and 125:

". . . The prompt and preemptory nature of the discharge, the form in which it was given, the failure of the company to sustain the charges against the employee, the attitude of extreme hostility to the union on the part of the officers of the company, the condemnation of the employees by the management for joining the union, the attitude and evasions of the only representative of the company who took the stand, all tended to support the findings of fact, particularly the finding that Biery was discharged not because of any seri-

ous neglect of duty but because he had joined the union."

In the case of Chapin v. Pennsylvania Labor Relations Board, supra, it was said by Mr. Justice Linn at page 581 that:

"The difficulty with the appellant's position on the charge of unfair labor practices is that the board, in the exercise of a power conferred on it, has found the facts against him. The Act as amended June 9, 1939, P. L. 293, section 9(b), P. L. 300, 43 P. S. 211.9, provides: '. . . and the findings of the board as to the facts, if supported by substantial and legally credible evidence, shall in like manner be conclusive.' Appellant thinks Chapin's testimony should have been accepted and the evidence on behalf of petitioner rejected by the board; but his evidence is contradicted in important particulars; some tribunal had to find the facts. 'It is the function of the board,' we said in P.L.R.B. v. Kauffman Department Stores, Inc., 345 Pa. 398, 400, 29 A. 2d. 90, 'not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances.'"

Wherefore, we conclude that the board has found a violation of section 6 (1) (c) of the Pennsylvania Labor Relations Act upon substantial and legally credible evidence.

The board has found that the employer on February 21, 1949, and subsequently thereto refused to bargain collectively with the union within the meaning of section 6 (1) (e) of the act.

After receiving the authorization cards, the union sent a telegram which was delivered to Mr. Frock on February 21, 1949, requesting recognition as bargaining agent and asking for a meeting to negotiate a collective bargaining agreement. The telegram was actually received by the employer at 11:45 a.m. The em-

ployer never replied to the telegram. Five employes were discharged within 24 hours of the receipt of the telegram. The question is, therefore, did the refusal to reply to the telegram and the subsequent conduct of the employer constitute a refusal to bargain collectively within the meaning of the statute.

It is the refusal of an employer to recognize a union or to bargain collectively with the union that constitutes a violation of the act: National Labor Relations Board v. Acme Air Appliance Co., Inc., 117 F.(2d) 417, 420 (1941). An employer cannot justify his refusal to bargain on the ground that he does not know whether the union represents the majority when he knows that the representatives claim to represent the majority: Art Metals Const. Co. v. National Labor Relations Board, 110 F. (2d) 148, 150 (1940). An employer will not be allowed to discredit a bargaining agency selected by the majority of his employes by refusing to bargain with it and then take advantage of the loss of membership due to his wrongful act as an excuse for a refusal to recognize the union as a bargaining agency: National Labor Relations Board v. Burke Mach. Tool Co., 133 F.(2d) 618, 621 (1943).

In National Labor Relations Board v. Wm. Tehel Bottling Co., 129 F.(2d) 250, 254 (1942), it was said by Gardner, J., in the opinion of the United States Circuit Court of Appeals for the Eighth Circuit:

". . . Frisby called Mr. Tehel by telephone, and after introducing himself requested an appointment for a collective bargaining conference. To this request, Mr. Tehel said he was too busy and hung up the telephone. A few minutes later Frisby again called for an appointment, but Tehel replied, 'I haven't got time to talk to you.' . . . He not only refused to see Frisby, but he expressed no willingness to see him at any other time. This conduct warranted the Board in finding a refusal to bargain within the meaning of the Act."

Particularly in point is National Labor Relations Board v. Crown Can Co., 138 F.(2d) 263 (1943), a decision of the United States Circuit Court of Appeals for the Eighth Circuit, wherein it appeared that an employer received a letter from a union organizer requesting a meeting for negotiating a contract. The letter was never replied to. Two days after the receipt of the letter, the employer called in two of the employes and told them, inter alia, that "If you boys insist on pushing this organization" the plant "will fold up." He also told the employes that if a wage increase was wanted, he would see what could be done about it. Four days later the wage increase was granted.

In affirming an order of the National board requiring that the employer bargain collectively with the union, it was said by Thomas, J.:

"The respondent contends that the Union representative at no time presented any convincing evidence of majority support, and that, therefore, the evidence does not support such finding. . . . It is true, of course, that an employer may request reasonable proof that the union represents a majority of the employees, and in the absence of such proof he need not bargain, if he in good faith doubts the union's majority. . . . In the instant case no inqniry was made nor proof requested by respondent, so that it is now in no position to complain that the union failed to present convincing proof that it represented a majority."

It is certain, therefore, that the conduct of Mr. Frock in failing to answer the union's telegram and his subsequent conduct warranted the conclusion of the board that there was a refusal to bargain collectively within the meaning of the act.

It was said by Maris, J., in delivering the decision of the United States Circuit Court of Appeals for the Third Circuit in National Labor Relations Board v.

Newark Morning Ledger Co., 120 F.(2d) 262, 265 (1941):

"The five kinds of unfair labor practice with which alone the board is empowered to deal are defined by Section 8, U. S. C. A., §158. The first is 'To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed. . . . The other four all relate to particular species of the generic unfair practice first defined and are specifically mentioned merely because of their prevalence.' "

Wherefore, the testimony which justified the board's finding of refusal to bargain collectively under section 6(1)(e) also justifies the findings of interference, restraint or coercion within the meaning of section 6(1)(a). It is well established by judicial authority that a refusal of an employer to bargain collectively amounts to interference with the right of self-organization: National Labor Relations Board v. Highland Park Mfg. Co., 110 F.(2d) 632, 639 (1940); National Labor Relations Board v. Barrett Co., 135 F.(2d) 959, 962 (1943).

Likewise, the testimony which justifies the board's findings of discrimination under section 6(1)(c) also justifies the findings of interference, restraint or coercion under section 6(1)(a). As was said by Hand, J., in delivering the opinion of the United States Circuit Court of Appeals for the Second Circuit in National Labor Relations Board v. Remington Rand, Inc., 94 F. (2d) 862, 869 (1938):

"Section 1(a) of the order was, nevertheless, valid, because the respondent did 'interfere with' rights secured by section 7, 29 U.S.C.A. §157 when it discharged twenty-eight of its employes for their union activity; that was probably the primary wrong against which section 8(1), 29 U.S.C.A. §158 (1) was directed."

It must be concluded, therefore, that the board properly found that the employer has committed un-

fair labor practices, within the meaning of section 6 (1) (*a*) of the act.

After the board had issued its nisi decision and order on May 31, 1949, the employer petitioned for the taking of additional testimony. In its order the board said:

"We have always permitted additional testimony where the proffered testimony is material to the case and might, if true, be made the basis of a finding in the case, even though a court of law might be justified in refusing to admit relevant testimony under the circumstances. We are satisfied that some of the testimony which the Company seeks to introduce, as set forth in paragraph 7 of its petition for additional hearing, is material, if true."

The averment in clause (*e*) of paragraph 7 of the employer's petition that only four employes favored the union at the time of filing the petition is not a permissible defense in the instant case as a shift in union's membership, brought about about by unfair labor practices of the employer, cannot operate to change the bargaining representative previously selected by the untrammeled will of the majority: National Labor Relations Board v. Bradford Dyeing Assn., supra, at page 929; National Labor Relations Board v. Chicago Apparatus Co., 116 F.(2d) 753, 758 (1940). An employer cannot discredit a duly designated bargaining agency by his own unlawful act and then be allowed to take advantage of a loss in membership: Medo Photo Supply Corp. v. National Labor Relations Board, 321 U. S. 678, (1944) ; Oughton et al. v. National Labor Relations Board, 118 F.(2d) 486, 490 (1940) ; Appeal of Harry D. Eckles, 9 Beaver 198, 210, 211 (1947).

Also, without evidential value as constituting a defense are the averments in clauses (b) and (d), (including the affidavit of Amos R. Pope) unless the

employer could prove that the union had committed unfair labor practices within the meaning of section 10.1 of the Pennsylvania Labor Relations Act which provides that "whenever the board shall find . . . that the party or parties filing charges of unfair labor practices . . . have engaged in an unfair labor practice . . . in connection with or as part of the actions forming the basis of the complaint, such findings shall constitute a complete defense to the complaint."

Coercive and intimidating tactics of a union in waging its industrial battle, which are in no way connected with and form no part of the employer's actions forming the basis of the complaint, are not union unfair labor practices within the meaning of section 10(1) even though the union conduct is grossly improper: In re Ewart et al., 42 D. & C. 307, 315, 316 (1941). Applying this test it is certain that the employer has not successfully defended the charges of unfair labor practices. Furthermore, employer failed to prove that physical coercion was practiced upon Hubert Stevens as averred in clause (a) of the petition or that the union had committed any unfair labor practice defined in the Pennsylvania Labor Relations Act.

The other averments in paragraph 7 of the employer's petition relate to the 10 "union cards" which are in evidence (complainant's exhibit 1A). The cards are identical and each contains the following provision:

### "AUTHORIZATION CARD

"International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (A.F.L.) Local No. 430.

"AUTHORIZATION FOR
REPRESENTATION:

"I, the undersigned, employee of the . . . . . . . . . . . . .
. . . . . . . . . . . . Name of Company

. . . . . . . . . . . . Employed as . . . . . . . . . . . . . Employ-
Job Title

ee's Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Hereby authorizes the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (A.F.L.) Local No. 430 to represent me and in my behalf, to negotiate and conclude all agreements as to hours of labor, wages and other employment conditions with my employer, above named.

The full power and authority to act for the undersigned as described herein supersedes any power or authority heretofore given to any person, or organization to represent me and shall remain in full force and effect for one year from date and thereafter, subject to thirty (30) days written notice of my desire to withdraw such power and authority to act for me in the matters referred to herein.

Date ................................................
Signature of Employee"

The board would not have been justified in finding that any union card was executed through fraud, accident, mistake or coercion. In any event the employer may not challenge the validity of the union cards before the board or before the court, as no objection was made by the employer at the time of its refusal to bargain with the union as the representative of the employes.

The instant case is very similar to National Labor Relations Board v. Wm. Tehel Bottling Co., supra, wherein it appeared that a majority of employes in the appropriate unit signed union cards and at the hearing the employer sought to prove that the signatures were obtained by duress and misrepresentation. It was said by Gardner, J., at pages 254, 255:

"The Board found from the evidence that such defections were caused by respondent's unfair labor practices, and hence they could not change the bargaining representative previously selected. . . . Neither do we think the membership cards may be collaterally at-

tacked by respondent on the ground that they were obtained by duress and misrepresentations. . . .

"It is undisputed that ten employees had signed application blanks for membership in the union prior to April 8, 1940, when respondent refused to bargain with the representatives of the Union. That represented a majority of employees constituting the unit. As already pointed out, the refusal to negotiate with the Union's representatives was not based upon any claim that the Union did not represent a majority of the employees. If respondent desired to raise that question, it should have done so at that time, and having failed so to do can not now urge it."

Wherefore, conclusions 8, 9, and 10, to the effect that no coercion was practiced upon any employe by the union; that no "union cards" were procured from any employe through fraud, accident, mistake or by coercion; and that conclusions numbered 1 to 7 inclusive in the nisi decision and order be reaffirmed, were supported by the substantial and legally credible evidence which the act commands.

It was said by Stone, J., in delivering the opinion of the United States Circuit Court of Appeals for the Eighth Circuit in Williams Motor Co. v. National Labor Relations Board, 128 F. (2d) 960, 964, 965 (1942) that:

"The 'central clue to the Board's powers' is the 'effectuation of the policies of the Act.' . . . It is this 'clue' which must be followed in finding whether a provision in an order of the Board is within its powers. . . . Unless the chosen remedy is clearly outside the power of the Board as applied to the particular situation, it should be sustained."

In paragraph 1 of the order the employer is directed to cease and desist from interfering with the exercise by the employes of their guaranteed rights. This direction is proper. It is the order which was approved

and enforced by the court in National Labor Relations Board v. Sunbeam Electric Mfg. Co., 133 F. (2d) 856, 861 (1943).

In paragraph 2 of the order the employer is directed to cease and desist from discharging or laying off employes or refusing to give them employment, or in any manner discriminating in regard to hire or tenures of employment or the terms or conditions of employment to discourage membership in the union. This directive is in harmony with the rule that "In the interest of certainty, administrative orders and judicial judgments should be limited strictly to disposition of only such issues as are actually presented": Singer Mfg. Co. v. National Labor Relations Board, 119 F.(2d) 131, 139 (1941).

In paragraph 3(*a*) of the order the employer is directed to offer John Jacoby, Victor Becker, Donald Henry, Bill Hanson, and Robert Bigham back pay, an order which is proper in this case because "Reinstatement of the employe and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement": National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U. S. 1, 48 (1937).

In paragraph 3(*b*) of the order the employer is directed upon request to bargain collectively with the union as the representative designated and selected by a majority of the employes in an appropriate unit. An order commanding collective bargaining with the agency last chosen by the free will of the employes is appropriate to effectuate the policies of the act: National Labor Relations Board v. Moltrup Steel Products Co., 121 F. (2d) 612, 618 (1941).

In paragraph 3(*c*) and (*d*) of the order, employer is directed to post a copy of the decision and order, and furnish satisfactory evidence of compliance. These directions are proper because "The employer must in-

deed post a notice that he will conform to the Board's order; that is no longer open to dispute, and, so far as we know, no court has ever held the contrary": Art Metal Const. Co. v. National Labor Relations Board, supra, at page 151.

It follows that the prayer of the Pennsylvania Labor Relations Board, pursuant to and in conformity with the provisions of section 9 (*a*) of the Act of June 1, 1937, P. L. 1168, and its amendments and supplements, for the entry of a decree enforcing the final order of the Pennsylvania Labor Relations Board must be granted and the appeal of the Hanover Cab Co., Inc., must be dismissed.

After compliance by the Hanover Cab Co., Inc., with the final order of the court, under the statement made by counsel for the Pennsylvania Labor Relations Board, we feel certain that the proper steps will be taken by the board to ascertain the amount of wages, if any, due John Jacoby, Victor Becker, Donald Henry, Bill Hanson, and Robert Bigham, based upon competent testimony and in accord with the legal principles set forth in the case of W. T. Grant Co. v. United Retail, 347 Pa. 224, and the record will be remanded to the board for that purpose.

And now, to wit, July 3, 1950, it is ordered, adjudged and decreed that the appeal of the Hanover Cab Co., Inc., be and the same is hereby dismissed, and the prayer of the Pennsylvania Labor Relations Board for enforcement of its order is granted; and it is further ordered, adjudged and decreed that the record be remanded to the Pennsylvania Labor Relations Board for the sole purpose of ascertaining the amount of wages, if any, due the employes, John Jacoby, Victor Becker, Donald Henry, Bill Hanson, and Robert Bigham, said order to be based upon competent testimony and under the legal principles set forth in W. T. Grant Co. v. United Retail, supra.