## Pennsylvania Labor Relations Board, Appellant, *v.* Sansom House Enterprises, Inc.

Argued April 14, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*George L. Reed,* Special Deputy Attorney General, with him *Jesse Hyman,* Counsel, *M. Louise Rutherford,* Deputy Attorney General and *Frank F. Truscott,* Attorney General, for appellant.

*I. Herbert Rothenberg,* with him *Lemisch & Ginsburg,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 28, 1954:

This is an appeal by Pennsylvania Labor Relations Board (hereinafter called "Board") from the final decree of the Court of Common Pleas of Philadelphia County modifying an order entered by the Board against Sansom House Enterprises, Inc. (hereinafter called "Employer").

Following charges of unfair labor practices filed by local Joint Executive Board, Hotel and Restaurant Employees and Bartenders International Union, A. F. of L., the Board issued a complaint against Employer charging unfair labor practices within the meaning of Section 6, subsections 1(a) and (c) of the Pennsylvania Labor Relations Act (Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.1 et seq.). Section 6(1)(a) provides that it shall be an unfair labor practice for an employer "To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.". Section 6(1)(c) makes it an unfair labor practice for an employer "By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization: . . .". Employer filed an answer denying the charges. Testimony was taken before an Examiner and thereafter the Board made a nisi order which in substance and material part directed the Employer (1) to cease and desist from interfering with, restraining and coercing

its employes; (2) to cease and desist from discriminating against its employes in regard to tenure of employment because of their known membership and activities on behalf of the Union; (3a) to offer (Mrs.) Mary Jane Greenwood, an employe, full reinstatement with back pay; (3b) upon request to offer full reinstatement without back pay to all employes who went out on or were affected by a strike instituted by the employes. There were also the customary directives to post a copy of the decision and order and furnish satisfactory evidence of compliance. Exceptions filed by the Employer were dismissed and the Board's nisi order adopted as its final order. A petition for rehearing was refused. The Employer then appealed to the Court of Common Pleas of Philadelphia County, and the Board filed a petition for enforcement by the court of its final order. The Union was allowed to intervene.

There was a hearing in Court of Common Pleas No. 6 and Judge Flood, after an apparent close scrutiny of the record in a painstaking opinion found that the Employer did not know of Mrs. Greenwood's activities and that whether or not she was discharged for absenteeism or unbecoming conduct, there was no substantial evidence to show that she was discharged for union activities. In its original opinion the court below held that discrimination in her case had not been proved and the Board had no right to order her reinstatement. This raised the question whether the Board would have ordered the reinstatement of the employes who went out on strike subsequent to Mrs. Greenwood's discharge had it concluded that her discharge was not discriminatory. The court therefore sent the case back to the Board for report to ascertain its position with regard to employes who subsequently went on strike in view of the court's reversal of the finding by the Board that Mrs. Greenwood's discharge

was discriminatory. The Board held that it would have so found because the Employer had been guilty of an unfair labor practice amounting to interference and coercion under Section 6(1)(a) of the Pennsylvania Labor Relations Act, supra, 43 PS §211.6. In its final opinion the court held that *Lancaster Yellow Cab & Baggage, Inc. v. Pennsylvania Labor Relations Board*, 371 Pa. 49, 88 A. 2d 866, prohibited the entry of an order reinstating striking employes because of violation of Section 6(1)(a) when no violation of Section 6(1)(c) (discrimination) was found.

The final order of the court below struck paragraphs 2, 3(a) and 3(b) from the order of the Board. It is from this order the appeal was taken.

The first legal issue presented is whether Employer was guilty of an unfair labor practice within the meaning of Section 6 of the Pennsylvania Labor Relations Act in discharging Mrs. Greenwood. The material factual issue is whether Mrs. Greenwood was discharged because of her union activities.

The basic facts as found by the Labor Relations Board were that Mrs. Greenwood had been employed as a waitress by Employer in January, 1952; that she was the employe most active in soliciting other employes to join the Union and that Mrs. Greenwood was discharged by one Mrs. Sharon, a secretary to the manager of Employer, on March 14, 1952. The Board also found that Max Blum, Secretary of Employer, shortly before March 14, 1952, used indecent language in telling Elizabeth Regan, a waitress, and other employes that he would rather close the Sansom House than have a union; that subsequent to Mrs. Greenwood's discharge Blum used similar language to the employes with respect to the Union, and also to officers of the Union when he refused to discuss the question of Mrs. Greenwood's discharge with them,

and that officers of the Union ordered a strike on or about March 16, 1952. There was no finding by the Board that employer knew of Mrs. Greenwood's union activities, and in fact no testimony in the record to the effect that those activities were known to Employer. Therefore the conclusion by the Board that Employer discriminated against Mrs. Greenwood by terminating her employment because of her activities on behalf of the Union is based upon two successive inferences: (1) that Employer knew of her union activities, and (2) that this knowledge was the motivating factor in her discharge.

Appellant quotes from *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.,* 345 Pa. 398, 29 A. 2d 90, to the effect that it is the function of the Labor Relations Board not only to resolve primary issues of fact but also to draw inferences from the established facts. In that case, this Court reversed a decision of the court of common pleas which had affirmed a decision of the Labor Relations Board ordering reinstatement of an employe. The basis of the reversal was that there was not sufficient evidence to support the inference that an employe had been discharged because of union activity. In the opinion the following language appears: ". . . Upon judicial review, however it is the duty of the court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators.

'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion': Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 229. 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established': National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292, 300. 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power': National Labor Relations Board v. Thompson Products, Inc., 97 Fed. 2d 13, 15; National Labor Relations Board v. Union Pacific Stages, Inc., 99 Fed. 2d 153, 177. 'Suspicion may have its place, but certainly it cannot be substituted for evidence': Union Trust Co. of Pittsburgh's Petition, 342 Pa. 456, 464, 20 A. 2d 779, 782.". There is no question as to the right of the Board to draw inferences from established facts and circumstances. The judicial function in the instant case is to determine whether the inference drawn by the Board, that Mrs. Greenwood was discharged because of her union activities, is supported by substantial and legally credible evidence.

In support of the conclusion reached by the Board, appellant argues that *Max Pisarev Co. v. Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 195*, 345 Pa. 123 (1942), 27 A. 2d 52; *Chapin v. Pennsylvania Labor Relations Board*, 356 Pa. 577 (1947), 52 A. 2d 568; *Lester v. Pennsylvania Labor Relations Board*, 364 Pa. 541 (1950), 73 A. 2d 681; *Pennsylvania Labor Relations Board v. Daum*, 365 Pa. 285 (1950), 74 A. 2d 649; *Pennsylvania Labor Relations Board v. Cadman*, 370 Pa. 1 (1952), 87 A. 2d 643; *Del Buono, Jr. v. Pennsylvania Labor Relations Board*, 370 Pa. 645 (1952), 89 A. 2d 323,

and *Pennsylvania Labor Relations Board v. Atlas Casket Company,* 370 Pa. 5 (1952), 87 A. 2d 645, are all cases where this Court approved the action of the Labor Board under similar facts. However, in all of these cases except *Del Buono, Jr. v. Pennsylvania Labor Relations Board,* the employer discharged the employe within one or two days after the employe either joined or became active in supporting the union; such evidence supports an inference that union activity was the motivating factor in the discharge. On the contrary, in the instant case the reason assigned by Employer for Mrs. Greenwood's discharge was absenteeism, and the discharge immediately followed an absence from work of four days. It appears from the record that Mrs. Greenwood was a member of the Union at the time she was employed in January, 1952. She testified that she was active in soliciting other employes to join the Union from about February 1, 1952. The time sequence of union activity and discharge which was such an important consideration in the above cases is not present here; therefore in order to support the action of the Board, there must be other evidence to support the inference that Mrs. Greenwood was discharged in order to discourage membership in a labor organization. In the *Del Buono* case, supra, there was an abundance of evidence that the employer was guilty of an unfair labor practice. That case bears no factual similarity to the instant case and the rule of that case is not applicable.

In the absence of binding precedent, the question presented for our consideration is whether repeated expressions of antagonism toward a union by an officer of Employer in foul language (made principally after an employe was discharged) will support an inference that the discharge was for the purpose of discouraging membership in a labor organization when

there is no direct evidence that the employer knew of the discharged employe's union activity, but there is evidence that the employe had been active in organizing the union for a period of six weeks prior to her discharge.

Unfair labor practices must be proved by substantial and legally credible evidence, and the burden of producing such evidence is on the Labor Relations Board: *Union Trust Company of Pittsburgh's Petition,* 342 Pa. 456, 20 A. 2d 779. Suspicion may not be substituted for evidence: *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.,* supra. The Board in its final decision recognized and stated this rule but did not apply it. Instead the Board placed the burden of proof on the Employer to sustain the reason assigned by it as a basis for Mrs. Greenwood's discharge. Under the Labor Relations Act, an employer may discharge an employe for good cause or for no cause at all, so long as the discharge was not for a reason prohibited by the Act. The employer is not required to convince the Labor Relations Board that the discharge was for good cause in order to be acquitted of a charge of an unfair labor practice, rather the burden is on the complainant to establish the charge by substantial and legally credible evidence. This burden was not met. Without going into the question whether the basic or underlying findings of the Board are based upon legally credible evidence, and accepting such findings of the Board, we cannot conclude that the ultimate finding that ". . . Sansom House Enterprises, Inc., has discriminated against Mary Jane Greenwood, one of its employees, within the meaning of Section 6, subsection 1, clause (c) of the Pennsylvania Labor Relations Act, by terminating her employment because of her known membership in, association with, and activities on behalf of Local Joint

Executive Board, Hotel and Restaurant Employees and Bartenders International Union, A. F. of L., and for the purpose of discouraging membership therein." is based upon substantial evidence. In the absence of any testimony to the effect that Employer knew of Mrs. Greenwood's activities on behalf of the Union, hostile remarks which an officer of Employer made principally after Mrs. Greenwood's discharge, even when combined with evidence that Employer knew that an attempt was being made to organize his employes, is insufficient evidence upon which to base a conclusion that the motive of Employer was to discriminate against her because of her union activities and to discourage membership in the Union.

There is one other matter to be considered, and that is whether the Board had power to order reinstatement of employes who went on strike subsequent to Mrs. Greenwood's discharge where a finding that such discharge was discriminatory had been reversed. The lower court concluded that there was no such power because of the holding of this Court in *Lancaster Yellow Cab & Baggage, Inc. v. Pennsylvania Labor Relations Board*, 371 Pa. 49, supra. In that case there was no *charge* that the employer was guilty of discrimination under Section 6 (c) of the Pennsylvania Labor Relations Act and we there held that under those circumstances the Board had no power to order reinstatement of striking employes. In the instant case the Employer was charged with an unfair labor practice under Section 6(c) but the finding of the Board on that point was properly reversed by the court below. Section 8 of the Pennsylvania Labor Relations Act, 43 PS §211.8, which empowers the Board to prevent any person from engaging in any unfair labor practice listed in Section 6, provides in subsection (c): ". . . If, upon all the testimony taken, the

board shall determine that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, the board shall state its findings of fact, and issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such reasonable affirmative action, including reinstatement of employes discharged in violation of clause (c) of subsection (1) of section six of this act, with or without back pay, as will effectuate the policies of this act . . .". The plain meaning of this portion of the Act is that the Board has no power to reinstate employes unless those employes have been discharged in violation of Section 6(1)(c). The inclusion of reinstatement in the "reasonable affirmative action" that the Board is authorized to take is expressly limited to reinstatement of *discharged* employes, and does not cover reinstatement of employes generally.

It is perfectly clear that none of the striking employes was discharged. A *charge* of violation of Section 6(1)(c) is not alone sufficient to empower the Board to order reinstatement; the charge must be supported by substantial and legally credible evidence. Since it has been determined that the charge was not so supported in the instant case, it necessarily follows that the Board had no power to order reinstatement of any employes, particularly those who went on strike subsequent to Mrs. Greenwood's dismissal. No charge of a violation of Section 6(1)(c) was made in connection with these employes and since none of them was discharged, the Board is not authorized by the statute to order their reinstatement. This conclusion is in accord with the statement of this Court in the *Lancaster Yellow Cab* case at p. 54: ". . . The amendment thus makes it clear that it is only when employes have been 'discharged in violation of clause (c) of subsec-

396

tion (1) of section six' of the act that the Board is given the power to order reinstatement. In fact, it is difficult to imagine any other reason for the Legislature's amendment of the act.".*

The order of the court below is affirmed.

Mr. Justice MUSMANNO dissents.

* See the amending Act of June 9, 1939, P. L. 293.