Crivelli Bros. Coal and Builders Supplies, Inc., Appellant, *v.* Pennsylvania Labor Relations Board.

Argued January 4, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry Alan Sherman,* for appellant.

*James F. Wildeman,* Special Deputy Attorney General, with him *Ben Paul Jubelirer, Leon Ehrlich,* Deputy Attorney General, and *Herbert B. Cohen,* Attorney General, for appellee.

OPINION BY MR. JUSTICE BELL, March 15, 1956:

The Pennsylvania Labor Relations Board found that four employes, truck drivers of Crivelli Bros., a corporation engaged in the business of selling at retail coal and building supplies and equipment, were discharged because of their union activities. This finding was based not upon direct testimony but upon an inference from the testimony produced by the employes. This finding was vigorously contested by the

employer, whose officers vehemently denied the charge and testified that Dean, Walker and Edwards "quit" and that Cimino was discharged for misconduct and neglect of duty, motor vehicle violations, unsatisfactory work, insubordination and improper conduct as an employe. Much of the testimony by or on behalf of the employes was in direct conflict with the strong testimony on behalf of the employer. The employer contends that the evidence was inadequate to establish that the employes were discharged for their union activities. This is the first question involved in the case.

We adopt the following excerpts from the able opinion of Judge KAUFMAN speaking for the Allegheny County Court:

". . . Charles Dean, Frank Cimino, William T. Walker and Charles Edwards were regular employes of the employer on and prior to September 27, 1954. The employer had no union or other labor organization connected with its business and had no labor contract with anyone. Shortly before September 27, 1954, the four employes named above had signed membership applications and had joined the union. On September 27, 1954, the officers of employer received information to the effect that the said employes had joined the union, and one of the officers, James P. Crivelli, approached Dean and Cimino and inquired of them whether it was true that they had joined the union. They replied that it was true, and that Walker and Edwards had also joined the union. James Crivelli then attempted to persuade them to withdraw their membership from the union, and he told them that the company was opposed to a union and would not hire union men, . . .

"The Board further found that shortly later on the same day a conference was held in the company office between the several officers of the employer and the

four employes, at which there was further discussion of union practices, seniority rights and union membership. James Crivelli suggested that a secret informal vote be taken among the four employes to determine who wanted a union, and he prepared four ballots for this purpose. All the employes refused to vote or sign the ballots, each of which stated 'I am willing to work for Crivelli Bros. as a non-union man.' Cimino asked James Crivelli if he would be discharged for joining the union, and when he received no answer he repeated the question. James Crivelli then told Cimino that he was 'fired' and told Nick Crivelli, a company clerk, to prepare and give Cimino his pay check in full. James Crivelli then assigned as the reason for discharge Cimino's tardiness in reporting for work, although at the later Board hearing additional reasons were given. However, the Board found that the discharge of Cimino was a direct result of his having joined the union and his engaging in union organization activities.

"The Board further found that the other three employes walked out of the office with Cimino at this time, held a short conference among themselves, and then returned and advised the officers of the employer that they had decided to remain with the union and 'stick with Cimino'. James Crivelli then told them that they too were discharged and directed that their paychecks be prepared and delivered to them. The Board found that their discharge was also because they had joined the union and engaged in union organization activities.

"The Board found also that the counter charges made . . . by officers of the employer . . . were not proved by competent evidence . . .

". . . the discharges of the employes were on account of their union membership and activity, to both of which the employer was hostile.

"Under the Act, Sec. 8(c), 43 P.S. 211.8(c), it is the duty of the Board, when there has been a complaint of unfair labor practice issued, to determine after a hearing whether there has in fact been an unfair labor practice committed, and to make findings of fact in connection therewith. The Supreme Court has repeatedly stated that it is the function of the Board to appraise conflicting evidence, to determine the credibility of the witnesses, to resolve primary issues of fact and to draw inferences from the established facts and circumstances. P.L.R.B. v. Sansom House Enterprises, 378 Pa. 385; Del Buono et al. v. P.L.R.B., 370 Pa. 645; P.L.R.B. v. Daum, 365 Pa. 285; Lester v. P.L.R.B., 364 Pa. 541. And the findings of fact made by the Board are conclusive upon the court upon review if they are supported by substantial and legally credible evidence, Pa. Labor Relations Act, Sec. 9(b), 43 P.S. 211.9(b); P.L.R.B. v. Daum, 365 Pa. 285."

This Court said in *P.L.R.B. v. Sansom House Enterprises, Inc.*, 378 Pa., supra: " '. . . upon judicial review, however, it is the duty of the Court to determine whether the findings of the Board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deducible therefrom are reasonable and not capricious.' "

We have reviewed the record and are convinced (1) that the Board and the Court below were justified, by the testimony of the witnesses whom the fact-finding body saw, heard and believed and the inferences reasonably deducible therefrom, in making the aforesaid findings of fact, and (2) said findings of fact were supported by substantial and legally credible evidence. We therefore sustain the findings of fact and the conclusion that the employes were unlawfully discharged because of their union activities.

A second and much more difficult question arises from the order of the lower Court which affirmed the order of the Board reinstating the four employes to their former positions with full back wages from the date of their respective dismissals to the date of the offer of reinstatement, less the amounts actually earned or losses wilfully incurred by each of said employes during such period.

The pertinent law is clearly set forth in *Del Buono v. P.L.R.B.*, 370 Pa., supra, where Chief Justice STERN said (page 652):

"In section 8(c) of the Labor Relations Act of 1937, as amended, it is provided that the Board shall 'take such reasonable affirmative action, including reinstatement of employes discharged in violation of clause (c) of subsection (1) of section six of this act with or without back pay, as will effectuate the policies of this act.' The Board found that the Company violated, inter alia, clause (c) of subsection (1) of section six of the act, and therefore was justified in ordering reinstatement; its order was in substantial conformity with our rulings in United States Retail Employees of America, Local No. 134 v. W. T. Grant Company, Inc., 341 Pa. 70, 17 A. 2d 614, and W. T. Grant Company, Inc. v. United Retail Employees of America, Local No. 134, 347 Pa. 224, 31 A. 2d 900. From any payments of back wages to be made to these discharged employes there must be deducted not only all amounts earned by them since their discharge but also any that could have been earned had they reasonably sought other employment. As stated by Mr. Justice PARKER in the latter of those cases (p. 227, A. P. 901): 'it was not the intention of the legislature that one who is deprived unlawfully of his employment should be maintained in idleness when he has had an opportunity to do work for which he is fitted. The employee is bound

to use reasonable efforts to find work and keep employed. This is the same rule that is applied to a discharged employee who sues for a breach of contract.' Moreover, if the business of the Mar-Lo Company has since diminished and the number of its employes has been reduced because a larger force was not required to meet its needs, such circumstances should be taken into account in determining the period during which these employes would normally have been employed had they not been discharged in violation of the Labor Relations Act."

The employer contends it produced uncontradicted evidence that after Dean, Walker and Edwards left their jobs it discontinued use of the four trucks formerly operated by them and Cimino, and that no driver and no equipment have been substituted for those discontinued by it on or about September 28, 1954. Crivelli further testified that the corporation had intended for several months prior to said date to discontinue deliveries by truck because they were economically burdensome and to change its mode of business operation in this respect, and that the only reason the trucks had not been sold previously was because Crivelli Bros. could not get the current market price.

The record discloses that on September 28, 1954, William Leap, one of the truck drivers for Crivelli Bros., was discharged. On October 5, 1954 William Leap purchased from Crivelli Bros. Sales and Service, Inc., a subsidiary of Crivelli Bros., one of Crivelli Bros.' trucks. Leap thereafter hauled and delivered merchandise on a contract basis for Crivelli Bros. but for no other person. He did not have a license from the Pennsylvania Public Utility Commission. On or before October 5, 1954 Fiorino Martin, an employe of Crivelli Bros. Sales and Service, Inc., purchased from Crivelli Bros. one of the trucks of Crivelli Bros. On October

19, 1954, the date of the hearing, Martin was driving the truck he purchased and doing part time work for Crivelli Bros. At the time of the hearing Crivelli Bros. had put up for sale, but had not been able to sell, two additional trucks. The other three trucks owned by Crivelli Bros. prior to September 27, 1954 were being driven by Angelo Crivelli, Nicholas Crivelli and, inferentially, by George Crivelli, all of whom prior to said date had been driving trucks for Crivelli Bros. There is no explanation of why the three Crivelli brothers continued to drive Crivelli trucks. This is in substance all the evidence pertinent to the second issue in this case.

Unfortunately, neither the Board nor the lower Court made any findings of fact upon this important controversial issue, i.e., whether the employer in good faith had abolished the jobs formerly held by Cimino, Walker, Dean and Edwards and had changed its method and scope of operation of the truck end of its business, or whether the change was a mere subterfuge. However, the Board and the Court did conclude ". . . that the subsequent disposal of equipment and reduction in number of employes *was precipitated** by the union picketing which followed the discharge . . . To deny the Board power and authority to order reinstatement in such circumstances would frustrate the policies of the act, rather than effectuate them as the Board is required to do."

The applicable test, we repeat, is that set forth in *Del Buono v. P.L.R.B.*, 370 Pa., supra, namely if, for reasons of economy or other sound or valid business reasons, defendant in good faith abolished the jobs here in controversy or reduced the number of its employes or discontinued or changed the mode and operation of

---

* Italics, ours.

its trucking business "such circumstances should be taken into account in determining the period during which these employes would normally have been employed had they not been discharged in violation of the Labor Relations Act". However, it is equally true that the jobs could not be abolished or the trucking business could not be discontinued by defendant as a mere subterfuge to evade (a) reinstatement, and (b) payment to its unlawfully discharged employes of the back pay to which they would otherwise have been justly entitled.

Both the Board and the Court below concluded, as above mentioned, that the employes should be reinstated with back pay. We cannot say, in view of the inferences which could properly be drawn from the evidence, that the findings were not supported by substantial and legally credible evidence or that the conclusions deduced therefrom were unreasonable and capricious.

Decree affirmed. Appellant shall pay the costs.