## Pennsylvania Labor Relations Board v. Battersby's Sons Corporation

48

*Thomas B. McBride*, Attorney General, *Leon Ehrlich*, Deputy Attorney General, and *James F. Wildeman*, Assistant Attorney General, for plaintiff.

*I. Bernard Fenner*, for defendant.

KUN, P. J., February 28, 1957.—This is an appeal by William Battersby's Sons Corporation, respondent, from an order of the Pennsylvania Labor Relations Board entered August 9, 1956, directing that it cease and desist from "interfering with, restraining and coercing its employees" in the exercise of rights guaranteed by the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.1 to §211.13 inclusive, and ordering the corporation to "bargain collectively with Funeral Directors' Union, Local No. 603". Within the time specified in the act, respondent, whom we shall hereafter refer to as Battersbys, or the employer, filed on December 6, 1956, an appeal to this court.

The powers and duties of the court in a labor matter of this sort are specifically set forth in section 9 (*b*) of the act, which provides that the certified record shall be filed after a "petition for review" has been presented, and that the court thereafter "shall have the same exclusive jurisdiction . . . to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside, in whole or in part, the order of the board. . . ."

The law covering the situation is well established, as found in the following cases: Foster v. International Brotherhood of Teamsters, etc., 45 D. & C. 591; Pennsylvania Labor Relations Board v. Heinel Motors, Inc., 344 Pa. 238; Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398

(particularly as to the necessity of "substantial and legally credible evidence" before findings and conclusions may be made by the board) ; Pennsylvania Labor Relations Board v. Sansom House Enterprises, Inc., 378 Pa. 385; Pennsylvania Labor Relations Board v. Camino, 47 D. & C. 1 (where the facts show a striking similarity to those before us, in over-impetuous acts by union representatives); Brass Rail Restaurant Company v. Pennsylvania Labor Relations Board, 375 Pa. 213 (in connection particularly with the determination petition and the investigation, certification and election to be held under the supervision of the board) ; and Duquesne Light Company Case, 345 Pa. 458, which describes the duties imposed on the board, the scope of the inquiry to be undertaken by the board in carrying out its duty of determining appropriate bargaining units and the "standards or norms" to guide the action of the board.

The facts, as they appear in the record before the court and gathered from the arguments of counsel, are clear. On April 6, 1956, Local No. 603, a newly chartered union, sent a registered letter to the employer stating that it desired to enter into collective bargaining on behalf of "licensed undertakers" of the employer as "their bargaining agent". The union indicated there were three such persons, but actually four were so licensed. Upon telephone conversation between employer's counsel and the organizer of the union, an election date was promptly set, at which the only four employes involved were to vote. The employer made no objection to an election; indeed showed no opposition to unions, or to this union. It appears of record that the examiner, the board, the organizer himself, as well as the board's counsel in this court, acknowledged the fairness with which the employer conducted the election agreed upon. The certification of the election which appears on page 13 of the notes

of testimony is that four persons (the four embalmers) voted 3 to 1 in favor of Local 603.

However, when the union sent over the contract it desired the employer to sign, it was found to include "*all employees*", excepting only "truckdrivers and office force". At that time the "office force" consisted of one Miss Catherine McKelvy, and there were no truckdrivers. The union sought, by the device of holding an election in which only four employes participated, to step in and to assume to act for all other employes, not embalmers, providing for wage increases for people who had not voted on the subject of joining the union at all. In these circumstances the employer could have properly refused to negotiate with the union until it submitted a contract relating only to the four employes who had voted by a 3 to 1 vote to join the union. The union president sought to put the blame on the typist for including the expansive provisions in the contract, far beyond the scope authorized by the vote.

The agreement submitted by the union was examined by the employer who testified without rebuttal on this point that as the examiner put it: "Other employes were also included in that agreement than merely the funeral directors." Despite the union's broadened scope of "bargaining", the employer nonetheless was willing to negotiate and bargain collectively, through its attorney, after pointing out that the agreement sought by the union encompassed the entire working force. The testimony shows the attitude of the employer, which even then did not refuse to bargain collectively, but they were willing "to sit down and negotiate an agreement, without prejudice."

The contract (page 17) clearly goes beyond four licensed embalmers. In the third paragraph, the union must be "recognized as the exclusive bargaining agent representing *the employees*" of Battersbys; the next

paragraph provides that as a "condition of employment, *all* employees" shall be or become members of the union (despite that only 3 of 12 employees had "signed up" with the union.) The last full paragraph on page 17 refers generally to the relationship between the employer *"and his employees"* and that it shall cover the employment *"of persons employed* by the employer". In view of the all inclusive fifth paragraph of the agreement defining employes as "all persons employed in or out of the plant of the employer in the City of Philadelphia except truckdrivers and office force," the union president's statement that "no others (but embalmers) were *intended* to be included" must be disregarded as wholly ineffective to destroy the provisions to the contrary as set forth in the proposed contract.

Throughout the entire agreement the reference to employes is nowhere limited to the licensed embalmers the union had purported to act for, and in whose behalf they pretended to have sought to bargain collectively. There are references (without limitations) in each article of the 18 of the agreement. In section 1, art. IV, the employer was required to deduct dues not only from the four licensed embalmers but "from *each employee's* pay"; the third section of that article provided that the union would furnish Battersbys with assignments "from *each* employer."

Upon receiving the agreement the employer pointed out that it went far beyond the four embalmer employes. Nevertheless, at no time in the intervening weeks did the union withdraw this agreement or submit any other relating to the four embalmers. Because of this the employer, after ineffectual attempts to get the union to bargain with it on a proper basis, filed a determination petition under section 7 (c) which provides: "Whenever a question arises concerning the representation of employes the board may, and, upon

request of a labor organization, *or an employer* . . .
*shall* investigate such controversy and *certify* to the
parties, in writing, the name or names of the repre-
sentatives who have been *designated or selected.*"
(Italics supplied) The act then provides for appro-
priate hearing, etc.

In view of the entire record we fail to see how the
board could find any factual basis for the conclusions
"on refusal to bargain" or "coercion"; these should
have fallen as did the charges that the employe, Ber-
nard J. Wilson, was discharged as part of the "coer-
cion". The board found his discharge was for proper
reasons; it could not base a finding of coercion on a
discharge that it had already found to have been
proper.

The board should have acted promptly on that de-
termination petition. It was perfectly clear that the
union had been designated as their representative by
a majority of the four embalmers only, and in no sense
for any of the other employes of employer and the
employer sought an official determination of that fact
so that it could proceed to negotiate with the union on
a proper, legal basis. Just why anyone should oppose
such a perfectly proper petition, seeking no more than
such determination, is difficult to understand. How-
ever, following the filing of the determination petition
by the employer, the union filed an "unfair labor"
charge against the employer on the alleged ground
that it had refused to negotiate. The record, however,
is replete with evidence that the employer at no time
refused to negotiate and was willing, either directly
or through counsel, to negotiate on the basis of the
election conducted by their four embalmers. Neverthe-
less, the board, for some unaccountable reason, sus-
tained the unfair labor charge against the employer
and refused to consider the employer's perfectly proper

determination petition. It is quite clear that in taking this action the board erred.

The board should act on the employer's determination petition, conduct its investigation and make the needed certifications, and order an election to be held by the employes for whom the union seeks to bargain beyond the four embalmers who are the only ones who have thus far voted on the subject. All the other employes have the same right to express their desire as to representation, which cannot be forced on them by the device which was attempted in this case.

The court, therefore, enters the following

### Order

And now, to wit, February 28, 1957, the appeal of William Battersby's Sons Corp. from the order of the labor relations board dated August 9, 1956, is sustained; findings of fact no. 17 and the discussion pertaining to unfair labor practices charged to respondent, and conclusions numbered 5, 6 and 7 are, each of them, set aside and the board's order is set aside.

The record supports neither the findings nor the conclusion of coercion; the charges of refusal to bargain and of "unfair" labor practices on the part of the employer were not proven, and the failure to consider the employer's "determination petition" was unwarranted. The case is hereby remanded to the labor relations board so that it may, in accordance with the determination petition filed by respondent: (a) Conduct an investigation under section 7 of the act; and (b) certify or designate the unit appropriate for the purpose of collective bargaining; and (c) in accordance with testimony already heard by the examiner, hold an election under board supervision, on a day to be determined by the board.