St. Joseph Hospital, Appellant, *v.* Pennsylvania Labor Relations Board of the Commonwealth of Pennsylvania, Appellee, and Pennsylvania Nurses Association, Intervening Appellee.

534

Argued October 9, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Thomas H. Lane*, with him *John D. Thrush, George I. Puhak* and *Morgan, Lewis & Bockius,* for appellant.

*James F. Wildeman*, with him *James L. Crawford,* for appellee.

*Wallace B. Eldridge, III*, with him *William Fearen* and *Cleckner & Fearen,* for intervenor.

OPINION BY JUDGE BLATT, December 27, 1974:

Janet Hutchinson and Diane Lesko were employed as nurses by St. Joseph Hospital (Hospital) in Hazleton, Pennsylvania, until November 8, 1971. On that date at about 7:00 A.M. they reported for work in the Intensive Care Unit (I.C.U.), where there were two patients there to be attended, and where two other nurses were then on duty, Sister Eligia, who was the supervisor of the I.C.U. and Nurse Kessel. Nurse Kessel left immediately to report to the third floor. Within ten minutes Nurse Lesko answered a telephone call from Sister Mary Nathaneal, the Director of Nursing Service at the Hospital, who ordered that either Nurse Lesko or Nurse Hutchinson also report to the third floor to help patients there. Nurse Lesko questioned this directive and pointed out that Nurse Kessel had already left the I.C.U. to help on the third floor and that a third patient was expected in the I.C.U. later in the morning. Sister Nathaneal replied that she was aware of these facts but that she still wanted another nurse to report to the third floor at once. Despite this instruction, neither Nurse Lesko nor Nurse Hutchinson reported to the third floor at that time. Instead, after waiting for a few minutes, they had Sister Nathaneal paged, and, when she arrived at the I.C.U. at about 7:30 A.M. they

indicated their reluctance to leave the I.C.U. because of their concern that it would be understaffed. By this time Sister Nathaneal had become very upset about the fact that her order had not been obeyed and, after she had restated her awareness of the conditions in the I.C.U. and had acknowledged that she would bear the responsibility for any consequences, her order was finally carried out at about 7:45 A.M. Later that day, at about 3:15 P.M., Nurses Lesko and Hutchinson were summoned to Sister Nathaneal's office and were then advised that they were being discharged for "insubordination."

Both nurses discharged had participated in the organizing activities of the Pennsylvania Nurses Association (PNA) during its successful campaign to achieve certification as the bargaining representative for the registered nurses at the Hospital, and the representation election had been held on August 12, 1971. The PNA filed charges of unfair labor practice against the Hospital with the Pennsylvania Labor Relations Board (Board), and alleged that the discharges of Nurses Lesko and Hutchinson had been directly related to their earlier organizing activities. Following a hearing before a hearing examiner, the Board issued a nisi decision containing findings of fact and conclusions of law to the effect that the Hospital had engaged in an unfair labor practice in violation of Sections 1201(a)(1) and (3) of the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, 43 P.S. §1101.1201(a)(1) and (3). The Board ordered the Hospital to cease and desist from any further such violations and to offer the two nurses reinstatement along with back pay. On appeal to the Court of Common Pleas of Luzerne County the Board was affirmed and the Hospital has now appealed to this Court.

Our scope of review here is ". . . limited to a determination of whether the findings of the Labor Board

are supported by substantial and legally credible evidence and whether the conclusions deduced therefrom are reasonable and not capricious, arbitrary or illegal." *Canon-McMillan School Board v. Commonwealth,* 12 Pa. Commonwealth Ct. 323, 325, 316 A. 2d 114, 115 (1974); *Pennsylvania Labor Relations Board v. State College Area School District,* 9 Pa. Commonwealth Ct. 229, 233, 306 A. 2d 404, 407 (1973). "Substantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398, 29 A. 2d 90 (1942). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Ronnie's Bar, Inc. v. Pennsylvania Labor Relations Board, 411 Pa. 459, 192 A. 2d 664 (1963). However, if a reasonable man could not have reached the decision from the evidence and its inferences, then the decision is not supported by substantial evidence and it should be set aside. A. P. Weaver and Sons v. Sanitary Water Board, 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971)." *Shive v. Bellefonte Area Board of School Directors,* 12 Pa. Commonwealth Ct. 543, 547, 317 A. 2d 311, 313 (1974).

In this case the Board made two key findings upon which there is no direct evidence in the record: (1) that Sister Nathaneal knew of the union activities of the two nurses, and (2) that her knowledge of these activities and her anti-union attitude were the motivating reasons for the discharges. The complainant, of course, always has the burden of proving a charge of unfair labor practice. *Union Trust Company of Pittsburgh's Petition,* 342 Pa. 456, 20 A. 2d 779 (1941). Because the complainants here rely upon inferences entirely, we must determine, therefore, whether or not these conclusions were based upon reasonable inferences from the testimony in the record.

Sister Nathaneal denied any knowledge of the two nurses' union activities but the Board disregarded her testimony to that effect and concluded that "any knowledgeable administrator" would have gained such knowledge from "the fact that both were members of the Intensive Care Unit, this being the small group of employes who spearheaded organizing activities and the fact that both engaged in open and extensive organizing activities in and about the hospital." The evidence to support this finding is certainly less than convincing. The record does not even establish that all of the nurses in the I.C.U. were indeed associated with the organizing movement, much less that the entire Unit had gained a reputation in the Hospital for spearheading the movement. In addition, the discharged nurses could each recall only one occasion when any administrative personnel were present while they were conducting organizing activities. Nor could they remember ever having seen Sister Nathaneal present on any such occasion.

Even if we assume, however, that Sister Nathaneal must have had knowledge of the two nurses' union activities, we cannot find substantial evidence to support the finding that she was improperly motivated in discharging the nurses. The only direct evidence of Sister Nathaneal's "anti-union feelings," in fact, was her own testimony at the hearing in which she candidly acknowledged her opposition to the organizing movement. She carefully pointed out at the same time, however, that she recognized the employes' collective bargaining rights under the law. Never does the record indicate that Sister Nathaneal or any other Hospital supervisory personnel actually displayed any inclination to inhibit unlawfully the organizing activity undertaken by the nurses. Our review of prior Pennsylvania cases indicates that anti-union animus is generally characterized by some statement or act on the part of the employer or his representative, which plainly indicates such an inclination

as, for example, a threat to fire the employe unless the organizing activities are discontinued. *See Pennsylvania Labor Relations Board v. Sand's Restaurant Corporation*, 429 Pa. 479, 240 A. 2d 801 (1968); *Crivelli Bros. Coal and Builders Supplies, Inc. v. Pennsylvania Labor Relations Board*, 385 Pa. 1, 122 A. 2d 32 (1956); *Chapin v. Pennsylvania Labor Relations Board*, 356 Pa. 577, 52 A. 2d 568 (1947). The two discharged nurses here merely recalled an impression that they were being watched more closely by their supervisors during the campaign. That alone, however, does not of itself establish an anti-union animus on the part of the Hospital.

The time sequence between the union activity and the discharge is also an important consideration in determining the motive of the employer. *See Pennsylvania Labor Relations Board v. Sansom House Enterprises, Inc.*, 378 Pa. 385, 106 A. 2d 404 (1954). A discharge of employes following closely on the heels of an employer display of anti-union animus combined with an insubstantial employer explanation for the discharges is a sufficient evidentiary foundation for a finding that the employer has committed an unfair labor practice. *Sand's Restaurant Corporation, supra.* In the case here concerned, however, a considerable time period of almost three months elapsed between the collective-bargaining election date and the date of the discharges. Moreover, Sister Nathaneal's stated reason for the discharges was substantial. In a hospital situation, orders must be carried out promptly and failure to carry out orders in such a situation can appropriately be termed "insubordination," especially where, as here, the failure extended for a period of more than a half-hour. "Insubordination," of course, was clearly a valid basis for discharge without warning or notice, and the nurses had been so advised in writing when they were hired.

The Board, in its decision, makes much of the fact

that another nurse, Miss Cheslock, who was not a union member, had been merely issued a written reprimand for a similar instance of insubordination which occurred at another time. Sister Nathaneal, however, was not personally present to witness Miss Cheslock's alleged insubordination, having issued the reprimand on the basis of a report she had received. Moreover, we do not believe that the different treatment for another nurse in an allegedly similar situation but at a different time and under different circumstances can establish of itself an anti-union motive for the discharges of Nurse Lesko and Nurse Hutchinson, especially inasmuch as there has been little, if any, evidence that Sister Nathaneal was at all aware of which of the individual nurses at the Hospital were involved in the PNA organizing activities.

We conclude that the Board's findings were not supported by substantial and legally credible evidence, and we must, therefore, reverse the order of the lower court as well as the ruling of the Board.

President Judge Bowman dissents.