Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board *v.* Association of Pennsylvania State College and University Faculties/ Pennsylvania Association of Higher Education (APSCUF/PAHE), Appellants. Bureau of Labor Relations, Intervening Appellee.

Argued February 2, 1976, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR., did not participate.

Robert Chanin, with him Robert W. Barton, and Killian & Gephart, for appellants.

Forest N. Myers, Assistant Attorney General, with him James F. Wildeman, Assistant Attorney General, Raymond W. Cromer, Assistant Attorney General, and James L. Crawford, Assistant Attorney General, for appellee.

OPINION BY JUDGE KRAMER, April 19, 1976:

This is an appeal by the Association of Pennsylvania State College and University Faculties/Pennsylvania Association of Higher Education (APSCUF/PAHE) from a final order of the Pennsylvania Labor Relations Board (PLRB)[1] dated July 11, 1975, which affirmed a nisi order of dismissal in which the PLRB concluded that the Commonwealth of Pennsylvania, Indiana University of Pennsylvania, was not guilty of an unfair labor practice. The sole issue involves the legal question of whether a public employer is required to "meet and discuss" in good faith under the provisions of Section 702 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, (Act No. 195), 43 P.S. §1101.702 (PERA). We will affirm the dismissal of the charges by the PLRB.

APSCUF does not challenge any of the findings of fact of the PLRB, which disclose the following pertinent information. APSCUF is an "employe organization" or union under the provisions of PERA and recognized as the exclusive bargaining representative for all faculty members employed by the Commonwealth in its institu-

---

1. By order dated December 18, 1975, the petition of the Bureau of Labor Relations, Intervening Appellee, to withdraw was granted and the Bureau was deleted as a party in this appeal.

tions of higher learning, including Indiana University of Pennsylvania. APSCUF and the Commonwealth entered into a collective bargaining agreement on September 5, 1972, to be effective November 2, 1971, through August 31, 1974. The agreement contained the following provision:

> "The President or his designee shall meet monthly with a committee appointed by APSCUF/PAHE for the purpose of discussing matters of educational policy and development as well as matters related to the implementation of this Agreement."

At Indiana University both APSCUF and the University selected teams to represent their respective positions for "meet and discuss" purposes. During 1973, the University experienced a budgetary crisis in that its anticipated income was more than a million dollars less than its anticipated expenses and, therefore, at a February 23, 1973, meet and discuss session, it was disclosed by the University's team that a University Committee was studying reallocation of the faculty after which it would make a report and recommendations on certain subjects including one pertinent to this decision, *i.e.*, sabbatical replacements. Under the previous University policy when a teacher left his or her post on a sabbatical leave another individual with similar qualifications was hired or transferred to teach the same courses in the same department.

There followed several meet and discuss sessions of the two groups and, although it is quite clear that APSCUF presented some suggestions on budget cutting and made inquiries about the subject of sabbatical leave, the budget committee of the University (on which the President of APSCUF had placed a nonvoting observer) recommended a freeze on sabbatical replacements. At the April 17, 1973, meet and discuss session, APSCUF was informed officially of the budget committee's recommendation. Additional meet and discuss sessions were

held at which the subject of sabbatical replacements was discussed. Eventually the budget committee's report was submitted to the President of the University, recommending that there be no sabbatical replacements. At this time the budget of the University had not been completed in final form. The record indicates that the final budget made provisions for sabbatical replacements.

This proceeding was commenced on May 8, 1973, when APSCUF filed an unfair practices charge with the PLRB alleging that the Commonwealth (Indiana University) had violated Section 1201 (a) (9) of PERA, 43 P.S. §1101.1201 (a) (9), which reads:

"(a)   Public employers, their agents or representatives are prohibited from:

.   .   .   .

"(9)   Refusing to comply with the requirements of 'meet and discuss'."

APSCUF contends that the University's meet and discuss team did not meet and discuss "in good faith" because of an implied promise to meet with the APSCUF team before a final resolution was made on the recommendations to the President of the University on the subject (among others) of the sabbatical replacements. APSCUF further contends that it was never consulted prior to the formulation of the decision by the University's team.

Since none of the factual findings of the PLRB are in dispute, we must review only the legal conclusions which the PLRB reached, based on those findings. *Albert Einstein Medical Center v. Pennsylvania Labor Relations Board,* 17 Pa. Commonwealth Ct. 91, 330 A.2d 264 (1975).

Three additional sections of PERA are involved which read as follows:

Section 701. *"Collective bargaining* is the performance of the mutual obligation of the public employer and the representative of the public employes

to meet at reasonable times and confer in *good faith* with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession." 43 P.S. §1101.701. (Emphasis added.)

Section 702. "Public employers shall *not* be required to *bargain* over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to *meet and discuss* on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives." 43 P.S. §1101.702. (Emphasis added.)

Section 301. " *'Meet and discuss'* means the obligation of a public employer upon request to meet at reasonable times and discuss recommendations submitted by representatives of public employes: Provided, That any decisions or determinations on matters so discussed shall remain with the public employer and be deemed final on any issue or issues raised." 43 P. S. §1101.301 (17). (Emphasis added.)

A reading of the briefs provides the interesting revelation that APSCUF and the PLRB are in agreement on almost everything except the result reached by the PLRB. The parties agree on all of the following matters. (1) They are in agreement on the facts. (2) They are in agreement that "good faith collective bargaining" is a phrase of art in labor law. (3) They are in agreement

that the term "good faith" is specifically used in Section 701 (collective bargaining) and is not specifically used in Sections 702 or 301(17). (4) They agree that good faith in collective bargaining is generally satisfied by a bona fide attempt of one party to reach agreement with the other party. (5) They agree that the meet and discuss process seeks different goals than those sought under collective bargaining. (6) They agree that the parties (to meet and discuss sessions) may not discharge their statutory obligations in bad faith. (7) They agree that the negotiation of an agreement is not one of the purposes of the meet and discuss session, although that could be a fortunate result. (8) They agree that a meet and discuss session can be a problem-solving process, as well as a problem-airing process. (9) They agree that one of the purposes of a meet and discuss session is to give the parties to a collective bargaining agreement an opportunity to resolve problems, questions and misunderstandings which occur during the life of an agreement. (10) They agree that nothing arising out of a meet and discuss session is necessarily binding upon the employer. (11) They agree that only the employes may request a meet and discuss session. (12) They agree that no affirmative action on the part of the employer may be required as a result of a meet and discuss session. (13) Finally, they agree that a collective bargaining session and a meet and discuss session are mutually exclusive. We cannot resist the temptation to place our imprimatur of approval on the foregoing enumerated expressions of harmonious agreement.

However, the parties disagree on the application of these agreed principles to the uncontested facts of this case. From a reading of its brief and from argument, APSCUF appears to seek from this Court an academic dissertation on semantics. APSCUF insists over and over again that the public employer under PERA must "meet and discuss in good faith." The PLRB argues that al-

though the parties may not meet and discuss in bad faith, APSCUF is erroneously attempting to apply the principles of "collective bargaining good faith" to meet and discuss sessions. We agree with the PLRB. As noted above, collective bargaining sessions and meet and discuss sessions were intended by the Legislature for two different purposes. The former is intended for the purpose of arriving at a collective bargaining agreement and the latter merely provides a forum for a dialogue between the parties after an agreement has been consummated. The meet and discuss sessions exist as a device to permit input or recommendations from the employes on policy matters affecting wages, hours and terms and conditions of employment so as to assist the public employer in ultimately making its discretionary resolution or disposition of the issues in question. As already noted, we agree that the parties cannot meet and discuss in *bad faith*, but that does not mean that "good faith," in the sense that the term applies to collective bargaining, should be required in meet and discuss sessions. In other words, meet and discuss sessions were not intended by the Legislature to provide a forum for negotiating, compromising or amending the existing collective bargaining agreement, but rather as a means for solving labor problems between public employers and their employes under their agreement and as a means to promte an orderly and constructive relationship between the parties.

APSCUF would have us, through this opinion, set forth the parameters within which the parties must meet and discuss. This we cannot do, because each case must be decided upon its individual facts. If the evidence proves that a public employer has met and discussed in bad faith, has reached its conclusion on the issues before the meet and discuss session, refuses to attend a meet and discuss session, refuses to listen to the employes, or fails to provide an opportunity for the employes to persuade, then we would have little difficulty in concluding

that an unfair practice has been committed under Section 1201(a)(9) of PERA. The burden of proving bad faith is placed upon the employes' labor representative, which filed the charge of unfair practices under that section of PERA. *St. Joseph Hospital v. Pennsylvania Labor Relations Board,* 16 Pa. Commonwealth Ct. 533, 330 A.2d 561 (1974). We have carefully reviewed this entire record and conclude that the legal conclusions of the PLRB were proper. Although we disagree with the flat statement found in the final order that the requirement of good faith on the part of the employer in a meet and discuss session is "absurd," we assume that that unfortunate expression was a slip of the pen, because we agree otherwise with the PLRB's analysis of the law.

The parties to a meet and discuss session must not be guilty of bad faith, and this implies good faith insofar as it pertains to fairness and sincerity, but it does not imply good faith as that term is used as a phrase of art in collective bargaining.

The officials of the University not only met the standards mentioned above for a meet and discuss session, they went beyond what was required. The University went to great lengths to provide meet and discuss sessions more often than was required by the collective bargaining agreement. A representative chosen by the president of the union was invited to sit in on all of the administration's budget committee meetings as a non-voting observer, which provided the union with vital information which could be used by the union in its meet and discuss sessions. If any further proof was necessary that the University carried out the legislative intent regarding meet and discuss sessions, the record proves beyond a shadow of a doubt that after the budget committee made its recommendations contrary to the desires of the union's meet and discuss team, the administration of the University changed its proposed budget and deviated from the budget committee recommendation so as

to include the sabbatical replacements about which the union team had been primarily concerned. If ever there was proof of fulfillment of the legislative intent, the record in this case provides it.

### ORDER

AND NOW, this 19th day of April, 1976, the order of the Pennsylvania Labor Relations Board in the above-captioned matter, dated July 11, 1975, is affirmed.